560 S.E.2d 410

**Mike BROWN, Howard Tharpe, Interstate Speedway, Inc., and Interstate Speedway, Appellants,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Office of Ocean and Coastal Resource Management and Lisa M. Hadstate, Respondents.**

No. 25420.

Supreme Court of South Carolina.

Heard Dec. 12, 2001.

Decided Feb. 25, 2002.

Rehearing Denied March 21, 2002.

508

Christopher McG. Holmes, of Charleston, for appellants.

Mary D. Shahid, of Charleston, for respondent South Carolina Department of Health and Environmental Control, Office of Ocean and Coastal Resource Management; Robert Guild, of Columbia, for respondent Lisa M. Hadstate.

James S. Chandler, Jr., of Georgetown, for Amici Curiae South Carolina Coastal Conservation League, Sierra Club, National Audubon Society, and South Carolina Wildlife Federation; Neil C. Robinson, Jr., of Nexsen, Pruet, Jacobs, Pollard & Robinson, LLC, of Charleston, for Amicus Curiae South Carolina Tourism Council, Inc.

Justice BURNETT:

This appeal concerns an application for a stormwater permit to construct a motor speedway. We affirm in part and reverse in part and remand this matter to the Administrative Law Judge (ALJ) for the purpose of determining whether a consistency review meeting the requirements of the Coastal Management Program had been conducted.

## FACTS

In September 1995, Appellants Mike Brown and Howard Tharpe, principals of Interstate Speedway, and Interstate Speedway, Inc. (collectively referred to as "Speedway"), applied with Respondent Department of Health and Environmental Control's (DHEC's) Office of Ocean and Coastal Resource Management (OCRM) for a stormwater permit as required by the Stormwater Management and Sediment Reduction Act (Stormwater Act)[1] in order to construct a motor speedway in Berkeley County. As part of this permitting process, OCRM was to ensure the proposed project, located in a coastal zone, was consistent with the policies of the Coastal Management Program managed by DHEC. *See* S.C.Code Ann. § 48–39–80(B)(11) (Supp.2001). Respondent Lisa M. Hadstate (Hadstate) submitted comments opposing issuance of the stormwater permit.

---

1. *See* S.C.Code Ann. §§ 48–14–10 to –170 (Supp.2001).

On November 7, 1995, OCRM issued the stormwater permit. Hadstate appealed, seeking a contested case hearing before an ALJ.

Testimony at the ALJ hearing revealed Speedway proposed to construct a motor racetrack consisting of a one-half mile concrete oval track, grassed parking lot, and mostly grassed infield on 61 acres located near the intersection of S.C. Highway 27 and Interstate 26 in Berkeley County. The racetrack would operate on Saturday afternoons and evenings from mid-March through September.

The proposed racetrack site is located within the Four Holes Swamp drainage basin. In general, witnesses opposed to the project expressed concern that stormwater sediment discharged from the speedway, both during and after construction, would cause erosion in the Four Holes Swamp,[2] the Francis Beidler Forest located within the swamp, and in other nearby property.

The ALJ issued a Final Decision upholding OCRM's issuance of the stormwater permit. Hadstate appealed the ALJ's Final Decision to the DHEC Board.[3] The Board reversed the ALJ, thereby denying Speedway a stormwater permit.

Speedway petitioned for judicial review of the Board's decision.[4] The circuit court affirmed. Speedway appeals.[5]

### ISSUES

I. Did the circuit court err by upholding the Board's decision that the ALJ erred by approving use of the rational method model for stormwater discharge?

II. Did the circuit court err by affirming the Board's conclusion there was no evidence OCRM conducted a consistency review which met the requirements of the Coastal Management Program?

---

2. Between 7,500 and 8,000 acres of the 45,000 acre swamp are located downstream from the proposed project site.

3. See S.C.Code Ann. § 1–23–610 (Supp.2001).

4. See S.C.Code Ann. § 1–23–380 (Supp.2001).

5. DHEC and Hadstate's motion to dismiss Speedway's appeal as moot is denied.

## ANALYSIS

This case involves appearances before four tribunals and includes three levels of appellate review. Pursuant to provisions of the Administrative Procedures Act (APA),[6] the ALJ presided as the fact-finder in the hearing of this contested case. S.C.Code Ann. §§ 1–23–600(B) (Supp.2001); *see* Jean Hoefer Toal, *et al., Appellate Practice in South Carolina* 49 (1999) (explaining three duties of ALJ Division—serving as fact-finder in certain cases, acting as appellate tribunal in other cases, and holding hearings on proposed regulations in other cases). Although this case reached the ALJ in the posture of an appeal, the ALJ was not sitting in an appellate capacity and was not restricted to a review of OCRM's permit decision. *See Reliance Ins. Co. v. Smith,* 327 S.C. 528, 489 S.E.2d 674 (Ct.App.1997). Instead, the proceeding before the ALJ was in the nature of a de novo hearing with the presentation of evidence and testimony. *Id.*

The first appellate review occurred when the final decision of the ALJ was reviewed by the Board under its limited scope of review set forth in § 1–23–610(D). The second appellate review occurred when the circuit court reviewed the Board's decision to determine whether it properly applied its standard of review set forth in § 1–23–610(D). The circuit court's well-established scope of review is set forth in § 1–23–380(A)(6). Our review of the circuit court order to determine if the lower court properly applied its scope of review constitutes the third appellate review. Our scope of review is the same as that established for the circuit court. § 1–23–380(A)(6).

## I. Rational Method

Speedway argues the circuit court erred by affirming the Board's decision that the ALJ erred by concluding the rational method was appropriately used to calculate stormwater runoff rates. It claims the applicable regulation provides OCRM with the flexibility to permit use of the rational method even when the project site is greater than 20 acres. Speedway further claims there is substantial evidence in the record which supports use of the rational method for its project and,

---

**6.** S.C.Code Ann. § 1–23–10 *et seq.* (1986 & Supp.2001).

therefore, OCRM properly applied its discretion to grant the permit application which used this method. We agree.

The purpose of the Stormwater Act is "to reduce the adverse effects of stormwater runoff and sediment and to safeguard property and the public welfare by strengthening and making uniform the existing stormwater management and sediment control program." Act No. 51, 1991 Acts 167. In keeping with this purpose, unless otherwise exempted, a person who intends to engage in a land disturbing activity must first submit a stormwater management and sediment control plan to the appropriate implementing agency and obtain a permit to proceed. § 48-14-30.

South Carolina Regulation 72-307 (Supp.2001) sets forth the design criteria, minimum standards, and specifications for projects requiring a stormwater management and sediment control plan. Preliminarily, Regulation 72-307(C) provides as follows:

Specific requirements for the permanent stormwater management and sediment control plan approval process include, but are not limited to, the following items. The appropriate plan approval agency may modify the following items for a specific project or type of project.

(Underline added).

Thereafter, the regulation lists twelve items as specific requirements for the permanent stormwater management portion of the plan. Item two follows:

(2) All hydrologic computations shall be accomplished using a volume based hydrograph method acceptable to the Commission. The storm duration for computational purposes for this method shall be the 24-hour rainfall event, SCS [7] distribution with a 0.1 hour burst duration time increment. The rational and/or modified rational methods are acceptable for sizing individual culverts or stormdrains that are not part of a pipe network or system and do not have a contributing drainage area greater than 20 AC. The storm duration for computational purposes for this method shall

---

7. SCS is the acronym for "soil conservation service."

be equal to the time of concentration of the contributing drainage area or a minimum of 0.1 hours, whichever is less. (Underline added).[8]

At the administrative hearing, Hadstate's expert witnesses testified it was inappropriate to use the rational method to calculate runoff from the 61 acre tract. The witnesses explained the rational method is only acceptable for use with small watersheds as it assumes the entire area contributes to stormwater flow, thereby losing its accuracy as areas increase in size.

Speedway's expert witnesses, including one employee of OCRM, testified the rational method was an appropriate model for the expected stormwater flow from the site. These witnesses explained the rational method suited this project because there was overall uniformity (very gentle slopes, no subwatersheds) in the watershed site. The OCRM witness testified that, on a case by case basis, OCRM permitted other applicants with a contributing drainage area greater than 20 acres to use the rational method. In permitting use of the rational method, the witness explained she relied on the "South Carolina Stormwater Management and Sediment Review" course materials which approve use of the rational method for contributing watersheds of up to 200 acres and a N.C. State publication which suggests use of the rational method for a watershed of up to 300 acres. Another OCRM expert witness testified he reviewed the rational method calculations conducted by Speedway's professional engineer and concluded they were appropriate.

The ALJ concluded the rational method model, recognized as reliable in various fields for designing storm drainage systems in excess of 20 acres, was properly utilized in Speedway's permit application. The Board, however, concluded OCRM and the ALJ "misinterpreted and misapplied" Regulation 72–307(C)(2). It held the regulation "specifically restricts the use of the rational method for hydrologic computations to sites much smaller than [Speedway's] site, and was used

---

8. The rational method is a mathematical equation which estimates pre and post-development peak discharge with application of runoff controls. The selection of certain variables in the equation (previous land uses, land cover, and soils) are subject to expert opinion.

improperly in evaluating this application." The circuit court agreed with the Board.

■ The scope of judicial review of agency decisions is governed by S.C.Code Ann. § 1–23–380(A)(6) (Supp.2001). "[T]he construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Dunton v. South Carolina Bd. of Examiners in Optometry,* 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987).

■ Where the terms of the statute are clear, the court must apply those terms according to their literal meaning. *Paschal v. State Election Comm'n,* 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995). An appellate court cannot construe a statute without regard to its plain meaning and may not resort to a forced interpretation in an attempt to expand or limit the scope of a statute. *Berkebile v. Outen,* 311 S.C. 50, 426 S.E.2d 760 (1993).

■ The plain language of Regulation 72–307(C)(2) provides that the rational and/or modified rational methods are, without qualification, acceptable methods for sizing individual culverts or stormdrains which are not part of a pipe network or system and do not have a contributing drainage area greater than 20 acres. The regulation does *not* state the converse: that the rational and/or modified rational methods are unacceptable for sites in excess of 20 acres. Instead, the regulation provides that, where appropriate, the rational and/or modified rational methods may be utilized. The prefatory comment to Regulation 72–307(C), specifically permitting the plan approval agency to modify the hydrograph method for a particular project, is fully consistent with Regulation 72–307(C)(2).

While the Court typically defers to the Board's construction of its own regulation, where, as here, the plain language of the regulation is contrary to the Board's interpretation, the Court will reject its interpretation. *Richland County School Dist. Two v. South Carolina Dept. of Educ.,* 335 S.C. 491, 517 S.E.2d 444 (Ct.App.1999) (court rejected agency's statutory construction where plain meaning of statute provided compelling reason to reject agency's interpretation). We conclude the Board erred by construing Regulation 72–307(C)(2) as

prohibiting use of the rational method model for calculating peak stormwater runoff for sites in excess of 20 acres.[9] Accordingly, the circuit court erred by affirming the Board's decision on this issue. *See* § 1–23–380(A)(6) (court may reverse decision if substantial rights of appellant have been prejudiced because agency conclusions are affected by error of law).

## II. Coastal Management Program Consistency Review

Speedway contends the circuit court erred by declining to rule the Coastal Management Program was not binding because it was not promulgated as a regulation. In addition, Speedway argues the circuit court erred by affirming the Board's conclusion there was no evidence OCRM conducted a consistency review which met the requirements of the Coastal Zone Management Act.

In 1977, the General Assembly enacted the Coastal Tidelands and Wetlands Act (Coastal Zone Management Act). S.C.Code Ann. §§ 48–39–10 to –360 (Supp.2001). Under the Coastal Zone Management Act, one of the South Carolina Coastal Council's (OCRM's predecessor) duties was to develop and administer a Coastal Management Program (CMP). § 48–39–80.[10] According to the applicable statute,

> The department shall develop a comprehensive [CMP] and thereafter have the responsibility for enforcing and administering the program in accordance with the provisions of this chapter and any rules and regulations promulgated under this chapter.

§ 48–39–80.

As part of the CMP, the Coastal Council was required to "[d]evelop a system whereby the department shall have the authority to review all state and federal permit applications

9. The Board's order does not mention the prefatory language to Regulation 72–307(C)(2). We therefore assume it did not consider whether there were any factual reasons for allowing use of the rational method here. We note there is substantial evidence in the record before the ALJ of site-specific reasons for use of the rational method as a model for Speedway's project.

10. Through government restructuring, this duty now belongs to DHEC. *See* § 48–39–10(V) ("department" means DHEC).

in the coastal zone, and to certify that these do not contravene the management plan." § 48–39–80(B)(11).[11] The parties agree the Coastal Council developed a CMP which was approved by the General Assembly and Governor. The CMP was published as a special edition of the *State Register*, 2 *State Register* (No. 26, Oct. 1978), and is reflected in the "CMP document." "Refinements" to the CMP document appear in the *State Register*. *See* 17 *State Register*, Issue 5, Part I, pp. 155–56 (May 1993); 17 *State Register*, Issue 6, pp. 55–56 (June 1993). These refinements were approved by the General Assembly and Governor.

## A. Legality of CMP

Speedway claims the Board had no authority to rely on the CMP because it was not promulgated as a regulation pursuant to the APA. This issue is not preserved for review.

After Speedway submitted its stormwater permit application, OCRM issued a public notice. In the notice, OCRM stated that, pursuant to statutory authority and the CMP, the project was seeking a determination that it was consistent with the CMP. OCRM issued the stormwater permit.

In her opening statement to the ALJ, Hadstate asserted OCRM failed to comply with the CMP as set forth in the CMP. OCRM responded that, in approving Speedway's stormwater permit, it did not violate the policies of the CMP.

Hadstate cross-examined OCRM expert witness Barbara Neale. Neale stated, prior to issuance of Speedway's stormwater permit, she determined the proposed project was consistent with the policies of the CMP. She admitted she had no documentation, other than the stormwater permit, which confirmed her consistency review.

Thereafter, Hadstate quoted various portions of the CMP's "Guidelines for Evaluation of All Projects" and asked Neale if there were any documents which reflected her consideration of the particular objectives. Neale responded that the permit letter itself was the document which indicated Speedway's project was consistent with the various CMP policy objectives.

---

11. This process is considered the "consistency review."

On re-direct, Neale testified the CMP refinements specifically address stormwater management in the coastal zone. She explained, when reviewing stormwater permit applications, she considers the refinements in order to evaluate a permit's consistency with the CMP. Neale testified she considered the refinements in reviewing Speedway's application, but the project categories in the refinements did not encompass Speedway's project.

In her Proposed Order, Hadstate stated OCRM failed in its duty to determine Speedway's permit complied with the CMP. In its Proposed Order, Speedway stated its permit was subject to the Coastal Tidelands and Wetlands Act. It stated OCRM reviewed its permit applications in accordance with "appropriate DHEC–OCRM statutes, regulations and guidelines."

In his Final Decision, the ALJ determined, because the proposed project is within a coastal zone, Speedway must meet the requirements of the CMP. He explained the CMP was refined in response to the adoption of the Stormwater Act. Without discussion of the evidence concerning the CMP consistency review, the ALJ approved OCRM's issuance of the stormwater permit.

In her Application for Board Review, Hadstate argued the ALJ erred by not concluding OCRM failed to determine Speedway's project was inconsistent with the CMP. She claimed OCRM was required to make a particularized determination that the project permit would be consistent with the CMP's policy objectives. Hadstate made a similar argument in her brief to the Board, asserting OCRM should have specifically considered several of the "Guidelines for Evaluation of All Projects" as set forth in the CMP.

In argument to the Board, Speedway asserted it obtained OCRM's consistency certification. In a lengthy discussion, OCRM stated it had conducted the consistency certification as part of "a streamlined permit process. It's implicit, it's done as a comment during the internal review, and a substantive review was performed."

In its Final Order, the Board determined the ALJ failed to consider whether OCRM conducted a consistency review. The Board determined there was no evidence to indicate OCRM conducted any review to determine if the permit was

consistent with the CMP document. After citing various "Guidelines for Evaluation of All Projects" in the CMP, the Board concluded Speedway's project was inconsistent with the policies of the CMP.

In its application for judicial review, Speedway asserted the Board erred in reversing the approval of its permit on the basis that the polices set forth in the CMP document are not binding regulations. Noting this issue had been raised neither to the ALJ nor to the Board, the circuit court declined to rule on this issue.

 Speedway asserts the circuit court's conclusion it could not rule on this issue is without basis because Speedway, as the prevailing party before OCRM, would not have raised the legitimacy of the CMP to the ALJ or the Board. We disagree.

In reviewing the final decision of an administrative agency, the circuit court sits as an appellate court. *See Al–Shabazz v. State,* 338 S.C. 354, 527 S.E.2d 742 (2000). Consequently, issues not raised to and ruled on by the agency are not preserved for judicial consideration. *Id.; Kiawah Resort Assoc. v. South Carolina Tax Comm'n,* 318 S.C. 502, 458 S.E.2d 542 (1995). Likewise, issues not raised to and ruled on by the ALJ are not preserved for appellate consideration. *Food Mart v. South Carolina Dep't of Health and Envtl. Control,* 322 S.C. 232, 471 S.E.2d 688 (1996) (matters not argued to or ruled on by the *trial* court are not preserved for review).

Speedway was required to raise the issue of the legitimacy of the CMP to the ALJ and the Board. The importance of the CMP was clearly at issue throughout these proceedings. In its public notice, OCRM stated Speedway was seeking a determination its project was consistent with the CMP. Before the ALJ and the Board, Hadstate consistently claimed OCRM failed to conduct a consistency review as required by the CMP. In fact, Speedway asserted at oral argument before the Board that OCRM had complied with the CMP. Speedway was fully aware of the significance of the CMP, yet failed to argue it was not bound by the program because the CMP was not promulgated as a regulation. Because Speedway failed to timely raise this issue for appellate review, the circuit court

properly determined it was not preserved for appellate review. *Kiawah Resort Assoc. v. South Carolina Tax Comm'n, supra; Food Mart v. South Carolina Dep't of Health and Envtl. Control, supra.*[12]

### B.

Speedway argues the circuit court erred by upholding the Board's conclusion OCRM failed to conduct a consistency review. It asserts the Board acted outside its quasi-judicial authority by determining there was no evidence in the record that OCRM conducted the consistency review mandated by the Coastal Zone Management Act. We agree.

As previously noted, in environmental permitting cases, the ALJ presides as the finder of fact. § 1–23–600(B). Regarding the final decision, the Administrative Law Judge Division Rules provide, the ALJ "shall issue the decision in a written order which shall include separate findings of fact and conclusions of law." Rule 29(C), ALJDRP. Rule 29(C) is essentially identical to § 1–23–350 which provides that the final order of an agency adjudication of a contested case "shall include findings of fact and conclusions of law, separately stated."

The Board, on the other hand, sits as a quasi-judicial tribunal in reviewing the final decision of the ALJ. § 1–23–610(A). As the "reviewing tribunal," the Board is not entitled to make findings of fact but:

may affirm the decision or remand the case for further proceedings; or it may reverse or modify the decision if the substantive rights of the petitioner has been prejudiced because of [sic] the finding, conclusion, or decision is:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

---

12. Speedway asserts Hadstate failed to raise the issue to the ALJ as to whether OCRM had conducted a consistency review. This is patently without merit. At the administrative hearing, Hadstate's cross-examination of witness Neale clearly indicated she believed OCRM had not conducted a consistency review. Furthermore, in her Proposed Order, Hadstate stated OCRM failed in its duty to determine Speedway's permit would be in compliance with the CMP.

(e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

§ 1–23–610(D).

■ Initially, we conclude the ALJ's Final Decision is insufficient for meaningful appellate consideration of the issue of consistency review. In spite of the dispute over whether a sufficient consistency review had been conducted, the Final Decision contains *no* reference to the evidence from the hearing and, more importantly, *no* factual findings concerning the consistency review process and how that process was conducted in this case. Assuming the ALJ determined Speedway's proposed project was consistent with the CMP,[13] the lack of any findings or any discussion of the law on this matter prevents a reviewing body from evaluating the decision. *See Heater of Seabrook, Inc., v. Public Serv. Comm'n,* 332 S.C., 20, 503 S.E.2d 739 (1998) (findings of fact must be sufficiently detailed to enable reviewing court to determine whether the findings are supported by the evidence and whether the law has been properly applied to those findings); *Able Communications, Inc. v. South Carolina Public Serv. Comm'n,* 290 S.C. 409, 351 S.E.2d 151 (1986) (implicit findings of fact are insufficient). Accordingly, because of the insufficient nature of the ALJ's order, the Board, as the reviewing tribunal, was precluded from conducting an acceptable review of the Final Decision.

Moreover, since the ALJ is the appointed fact-finder in these matters, the Board lacked authority to make its own findings of fact concerning whether a consistency review meeting the terms of the CMP had been conducted. For these reasons, the Board exceeded the scope of its quasi-judicial authority as set forth in § 1–23–610. Rather than ruling in the first instance on this issue, the Board was required to remand this matter to the ALJ for an order clarifying whether

---

13. For purposes of this opinion, we make this assumption because the ALJ recognized the applicability of the CMP and ruled in favor of issuance of the stormwater permit. On the other hand, the ALJ may have overlooked ruling on the CMP. This conundrum illustrates the inadequacy of the ALJ's order.

a consistency review meeting the requirements of the CMP had been conducted. § 1–23–610(D) (Board has authority to remand case for further proceedings). Accordingly, we conclude the circuit court erred by affirming the Board's findings of fact and conclusions of law concerning the sufficiency of OCRM's consistency review. § 1–23–380(A)(6)(b) (circuit court should reverse agency decision if ... made in excess of statutory authority).[14]

The order of the circuit court is **AFFIRMED IN PART, REVERSED IN PART, and REMANDED** to the ALJ for further proceedings consistent with this opinion.

TOAL, C.J., WALLER, MOORE and PLEICONES, JJ., concur.

---

**14.** To the extent they hold CMP certification pursuant to § 48–39–80 is not reviewable under provisions of the APA, *League of Women Voters of Georgetown County v. Litchfield–by–the Sea*, 305 S.C. 424, 409 S.E.2d 378 (1991), and *Ogburn–Matthews v. Loblolly Partners (Ricefields Subdivision)*, 332 S.C. 551, 505 S.E.2d 598 (Ct.App.1998), are overruled.