THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Hospital Land Partners, LLC, Appellant,
 v.
 South Carolina
 Department of Health and Environmental Control, Office of Ocean and Coastal
 Resource Management, Respondent.
 
 Hall
 Development, Glenn Hall, Carl Hyszczak, Irene Hyszczak, June Darville,
 Charles Darville, Rose Suess, Carl Suess, George Pendleton, Carl Franklin,
 Mildred Borbet, Gladys Bride, John Bride, D. C. Abernethy, Leo Wever, Richard
 Smith, Donald Joy, Joan Joy, Renzo Falcinelli, Nancy Falcinelli, Joyce Utt,
 Boyd Parker, Anne Parker, Alfred Robertson, Ronald Longnecker, Bonnie
 Longnecker, William Besemer, Lee Besemer, Richard Geller, John Shaw, Norman
 Heindel, Stan Petroski, Patricia Hosford, and Leo Reddan, Respondents,
 v.
 South Carolina
 Department of Health and Environmental Control, Office of Ocean and Coastal Resource
 Management, and Hospital Land Partners, LLC
 of which
 DHEC-OCRM is a Respondent
 and
 HLP is the Appellant.
 
 
 

Appeal From Horry County
  J. Stanton Cross, Jr., Circuit Court
Judge

Unpublished Opinion No.  2008-UP-330
Heard May 6, 2008  Filed July 1, 2008
Withdrawn, Substituted and Refiled
September 23, 2008

REVERSED IN PART AND VACATED IN PART

 
 
 
 Leon Carroll Harmon, of Greenville, for Appellant.
 Carlisle  Roberts, Jr., of Columbia, Cotton C. Harness, III, of
 Mt. Pleasant, Evander  Whitehead, of Charleston, James S. Chandler, Jr., of
 Pawleys Island, for Respondents.
 
 
 

PER CURIAM:  This
 action involves Hospital Land Partners (HLPs) application to obtain a
 stormwater management permit to allow for development of land set aside as a
 mitigation site for previous development.  We reverse in part, and vacate in
 part.   
FACTUAL/PROCEDURAL BACKGROUND
HLP owns an 8.55 acre parcel of property (the Property) near Conway, South Carolina.  The Property was once part of a larger tract owned by
 International Paper known as Southbridge.  In the early 1980s, International
 Paper entered into an agreement with Glenn Hall for development of the
 property.  Pursuant to the agreement, Hall Development would develop the property
 and then purchase the lots from International Paper as the lots were finished. 
 Hall Development was responsible for obtaining state, local, and federal
 permits.  It obtained a permit from the U.S. Army Corp of Engineers and a
 coastal zone consistency certification from the State of South Carolina,
 through the South Carolina Coastal Council, which was the predecessor to the Department
 of Health and Environmental Controls (DHECs) Office of Ocean and Coastal
 Resource Management (OCRM).  Hall Development was allowed to fill three wetland
 areas, totaling 1.029 acres for Section VIII of Myrtle Trace Subdivision and
 dredge another area to make a lake.  As mitigation for this, Hall Development
 was to protect another wetland area consisting of 4.689 acres and establish a
 buffer around the wetlands.  The total mitigation site was 8.337 acres.  No
 conservation easement or restrictive covenants were placed on the Property,
 which remained titled to International Paper.  At the time, the policies of the
 Army Corps of Engineers and the Coastal Council did not include the requirement
 that a permittee record restrictive covenants and/or conservation easements to
 protect wetlands, wetland buffers, and land provided in mitigation.  
The
 members of HLP, Thomas Roe and Dr. Michael Hodge, became interested in the
 Property in late 1996 or early 1997.  Thomas Roe met with Allen Moore, an
 employee of International Paper in charge of the real estate portfolio,
 regarding the availability of the Property.  Moore told Roe that the Property
 was available but messed up.  Moore testified he told Roe that the Property
 had potential problems with a Corps of Engineers permit.  A partnership formed
 by Roe and Hodge, Hodge-Roe General Partnership, entered into an option
 agreement with International Paper to purchase the Property for $225,000.  The
 partnership paid only $10.00 for the option.  The attorney who conducted the
 title examination did not find any problems with the Property, other than a
 deed to the South Carolina Department of Transportation.  This matter was
 resolved.  The Partnership also commissioned a wetland redelineation to be
 conducted by the Brigman Company, which had also conducted the earlier wetlands
 delineation for Hall Development.  The delineation, which was approved by the
 Corps of Engineers and verified by OCRM, showed that less than 0.8 acres of
 wetlands remained on the site.  The reduction possibly resulted from a
 combination of factors, including changed Corps wetland delineation guidelines,
 the excavation of the adjacent wetland, and the creation of the drainage canal
 constructed earlier between the Property and Myrtle Trace.  
The Partnership purchased the Property on December 12, 1997 and
 subsequently deeded it to HLP.  The timber on the Property was harvested in
 April of 1998.  The residents of Myrtle Trace and Glenn Hall objected to any
 development of the Property.  When HLP applied to have the Property rezoned,
 the Horry County Planning Commission required HLP to obtain a letter from the
 Corps of Engineers concerning the status of the Property as a mitigation site. 
 The Corps responded that although the property was offered as mitigation for a
 permit, there were no easements or covenants in its records and HLP could
 proceed with any work in areas not designated as jurisdictional in the
 delineation.  OCRM refused to issue a similar letter because the Property had
 been offered by Hall Development as mitigation for wetlands filled by it.  
On July 7, 1999, HLP submitted an application to OCRM seeking a stormwater
 management and sediment control permit as required by the Stormwater Management
 and Sediment Reduction Act.  See S.C. Code Ann. § 48-14-30(A) (2008) (Unless
 exempted, no person may engage in a land disturbing activity without first
 submitting a stormwater management and sediment control plan to the appropriate
 implementing agency and obtaining a permit to proceed.).  As part of this
 permitting process, OCRM was to ensure the proposed project, located in a
 coastal zone, was consistent with the policies of the Coastal Management
 Program managed by DHEC.  See S.C. Code Ann. § 48-39-80(B)(11) (2008)
 (authorizing DHEC to develop a plan to review all state and federal permit
 applications in the coastal zone, and to certify that these do not contravene the
 management plan).  In the application, HLP sought approval of a plan to disturb
 7.77 acres of land for construction of a residential care facility.  Although
 the application indicated that no wetlands would be disturbed, the area
 disturbed would include the mitigation site.  In a letter dated September 27,
 1999, OCRM informed HLP that the project was inconsistent with the Coastal Zone
 Management Program.  However, the letter set forth several conditions that, if
 accomplished, would bring the project into consistency.  These conditions were
 that HLP was to:

 a. Provide for a buffer
 around the wetlands on the HLP property and adjacent tract, which is adjacent
 to the southern property line of the HLP property;  
 b. Redirect storm water
 runoff at several locations into the wetlands;
 c. Replant vegetation to
 replace the vegetation that was cleared.  This was to re-establish the natural
 screen between the wetland and the upland area;  
 d. Purchase credits in an
 off-site mitigation bank, in order to mitigate for the difference in the amount
 of wetlands that were delineated in 1991 and the current amount.  The credits
 would be no more than $20,000;  
 e. Formally preserve all
 of the wetlands and buffers in the area with a standard deed restriction.[1]  

HLP
 appealed to the Administrative Law Judge (ALJ), contesting OCRMs
 requirements.  In addition, Hall Development and Glenn Hall (collectively Hall)
 and residents of Myrtle Trace appealed to the ALJ contesting the projects
 consistency with the Coastal Zone Management Act, Coastal Zone Management
 Program Document, and the South Carolina Stormwater and Sedimentation Reduction
 Act.  The appeals were consolidated for one hearing.  On the second day of the
 hearing, HLP withdrew its claims of lack of authority by OCRM to require the conditions
 and agreed to all of the conditions set forth in OCRMs letter.  
The ALJ
 noted OCRM has significant discretion in any decision to grant or deny a
 coastal zone permit.  He concluded that the buffers and the purchase of credits
 in a mitigation bank to mitigate for the loss of wetlands that has occurred
 over time comply with the requirements of the Coastal Zone Management Program. 
 He rejected Hall and the Residents res judicata argument, finding the
 loss of wetlands on the property presented a change in circumstances not
 contemplated by OCRM in its original certification determination.  He found
 OCRMs proposed mitigation plan would protect the remaining wetlands more
 effectively than preservation of the status quo.  The ALJ ordered HLP to submit
 a stormwater management plan that incorporates the conditions listed in OCRMs
 September letter.  
Hall and the Residents appealed to the DHEC Board.  The DHEC Board
 initially rejected the ALJs findings of fact and made its own findings.  It
 reversed the decision of the ALJ and denied HLPs application for a storm water
 and sediment control permit.  HLP appealed to the circuit court, which vacated
 the decision of the DHEC Board for making its own findings of fact.[2]  After the remand, the DHEC Board
 found the Coastal Zone Management Program certification of Phase VIII of the
 Myrtle Trace development, which required the setting aside and protection of
 the buffer area as mitigation, constituted a final agency action.  It held that
 [o]nly in extraordinary cases can the terms and conditions of a final [Coastal
 Zone Management Program] certification be rescinded.  This is clearly not one
 of those cases.  It held that the effect of the ALJ order would be to allow
 development of the buffer area previously set aside as mitigation and this
 constituted an error of law.  It affirmed the ALJs findings of fact but
 reversed as to its conclusions of law.  Thus, it denied HLPs application for a
 permit.  
HLP appealed to the circuit court.  The court summarized the testimony
 presented at the hearing before the ALJ.  It held that the DHEC Boards
 decision that once a piece of land is set aside as mitigation, it must stay set
 aside in the absence of extraordinary circumstances was squarely a ruling of
 law.  It concluded the Boards ruling on this question of law had legal and
 factual support.  In affirming the Boards order, the circuit court also
 addressed several additional sustaining grounds.  The court subsequently denied
 HLPs motion to alter or amend.  This appeal followed.  
STANDARD OF REVIEW
Under the APA (Administrative Procedures Act), the Administrative
 Law Judge presides as the fact finder.  See S.C. Code Ann. § 1-23-600(B)
 (2005); [3] Brown v. S.C. Dept of Health & Envtl. Control, 348 S.C. 507, 520,
 560 S.E.2d 410, 417 (2002).  In reviewing the final decision of the ALJ, the
 DHEC Board sat as a quasi-judicial tribunal and was not entitled to make
 findings of fact.  Brown, 348 S.C. at 520, 560 S.E.2d at 417.  The DHEC
 Board can only reverse the ALJ based on an error of law or if his findings are
 not supported by substantial evidence.  See Dorman v. S.C. Dept of
 Health & Envtl. Control, 350 S.C. 159, 165, 565 S.E.2d 119, 122 (Ct. App.
 2002).  The circuit courts review is the same as this courts.  It may reverse
 a decision of an administrative agency if the agencys findings or conclusions
 are:

 (a) in violation of constitutional or statutory provisions;  
 (b) in excess of the statutory authority of the agency;  
 (c) made upon unlawful procedure;  
 (d) affected by other error of law;  
 (e) clearly erroneous in view of the
 reliable, probative and substantial evidence on the whole record;  or 
 (f) arbitrary or capricious or
 characterized by abuse of discretion or clearly unwarranted exercise of
 discretion.  

S.C. Code Ann. §
 1-23-380(A)(6) (2005).
In
 determining whether the ALJs decision was supported by substantial evidence,
 this court need only find, looking at the entire record on appeal, evidence
 from which reasonable minds could reach the same conclusion that the
 administrative agency reached.  DuRant v. S.C. Dept of Health & Envtl.
 Control, 361 S.C. 416, 420, 604 S.E.2d 704, 706 (Ct. App. 2004).  The mere
 possibility of drawing two inconsistent conclusions from the evidence does not
 prevent a finding from being supported by substantial evidence.  Id. at 420, 604 S.E.2d at 707. 
DISCUSSION
1.  Permit
 Application
HLP
 argues the DHEC Boards order and the circuit courts order are erroneous as a
 matter of law.  We agree.  
The
 DHEC Board ruled, Only in extraordinary cases can the terms and conditions of
 a final CZMP certification be rescinded.  It concluded this case did not meet
 that criteria.  DHEC is the agency in charge of enforcing and administering the
 provisions of the Coastal Zone Management Act and the rules and regulations
 promulgated under it.  S.C. Code §48-39-50 (2008).  In addition, DHEC is
 charged with the development of a comprehensive coastal management program and
 the enforcement and administration of this program.  S.C. Code § 48-39-80
 (2008).  Its interpretation of these statutes and regulations is given great
 deference by the courts.  See Dunton v. S.C. Bd. of Examrs in
 Optometry, 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987) ([T]he
 construction of a statute by the agency charged with its administration will be
 accorded the most respectful consideration and will not be overruled absent
 compelling reasons.).  In the present case, however, neither the statutes nor
 the regulations promulgated thereunder set forth a requirement of an
 extraordinary case in order for a prior mitigation site to be modified.  The
 DHEC Board cannot create a new test by way of quasi-judicial order, but rather
 must promulgate such a test by regulation.  See Captains Quarters
 Motor Inn v. S.C. Coastal Council, 306 S.C. 488, 491, 413 S.E.2d 13, 14
 (1991) (holding OCRMs predecessor, the South Carolina Coastal Council,
 overstepped its statutory authority in formulating and applying a damage
 assessment test for purposes of permit evaluations without formalizing it by
 regulation).  
Hall
 and the Residents assert that under the Coastal Zone Management Program
 Document, once a permit is issued, OCRM may not take any inconsistent action. 
 It asserts OCRM could not modify the original certification.  This provision
 actually provides, In those instances where more than one permit is required
 for a project, as long as no components of the project change, the Department
 will only place the first permit received on public notice.  The Department
 will take identical action on all sequential permits.  The provision simply
 allows that once OCRM determines a project is consistent with the Coastal Zone
 Management Program and issues the first permit, it will do the same with
 subsequent permits for the same project.  Thus, it could not grant one permit
 and then deny a subsequent permit for the same project.  
The
 instant case involves a permit application for an entirely different project
 than the development of Myrtle Trace in which the original mitigation site was
 set aside.  It does not involve the rescission of the original Coastal Zone
 Management Program certification; rather it simply allows a release of an area
 that was required to be set-aside as a mitigation site.  We find the above
 provision inapplicable to the present case.  
 We
 conclude the DHEC Board erred as a matter of law in creating a test not set
 forth in statute or regulation.  Therefore, we must affirm the ALJs findings
 and conclusion that HLPs project was consistent if there is substantial
 evidence in the record to support the decision.  See S.C. Code Ann. §
 1-23-380(A)(6) (2005).
The
 General Assembly mandated the specific state policy to be followed in the
 implementation of the Coastal Zone Management Act is: 

 [t]o promote economic and social improvement of the citizens of
 this State and to encourage development of coastal resources in order to
 achieve such improvement with due consideration for the environment and within
 the framework of a coastal planning program that is designed to protect the sensitive
 and fragile areas from inappropriate development and provide adequate
 environmental safeguards with respect to the construction of facilities in the
 critical areas of the coastal zone . . . .

S.C. Code Ann. §
 48-39-30(B)(1) (2008).  
In
 furtherance of this policy, the General Assembly set forth considerations in
 the approval or denial of a permit, which include:

 (7) The extent of the economic benefits as compared with the
 benefits from preservation of an area in its unaltered state.
 (8) The extent of any adverse environmental impact which cannot be
 avoided by reasonable safeguards. 
 (10) The extent to which the proposed use could affect the value
 and enjoyment of adjacent owners. 
 
S. C. Code Ann. §
 48-39-150 (2008).  
In
 addition, OCRMs Coastal Zone Management Program Document provides additional
 guidelines for evaluating projects, including the extent to which the project
 includes consideration for the maintenance or improvement of the economic
 stability of the coastal communities, and the possible long-range, cumulative
 effects of the project, when reviewed in the context of other possible
 development and the general character of the area.  
The ALJ
 considered these factors in concluding that OCRM adequately evaluated the
 project and correctly found that the project, as revised, was consistent with
 the Coastal Zone Management Program.  Robert Mikell, manager of federal
 certification for OCRM, testified that if HLP made the changes set forth in the
 September of 1999 letter, the project would be in compliance with the Coastal
 Zone Management Program.  The amount of wetlands on the Property significantly
 decreased since the Property was originally set aside as a mitigation site. 
 This decrease, due in part to the lake and canal constructed in Myrtle Trace,
 happened before HLP purchased the property.  Mikell stated that the HLP project
 does not directly impact the remaining wetlands on the Property as they will
 not be filled, excavated, or dredged.  
The ALJ
 also considered the modifications OCRM required in its September of 1999
 letter.  The first requirement set forth in the letter is buffering.  Although
 OCRMs Coastal Zone Management Program document suggests that commercial
 buffers should be at least an average of 50 feet, OCRM allowed a buffer of an
 average of 32 feet for this project.  Mikell testified that a 32-foot buffer
 can be acceptable depending on the area that is being buffered, the size of the
 wetland, the type of development, the site plan, and the fact that the project
 does not impact wetlands.  The ALJ concluded the buffer in place was adequate
 of function as intended.  There is substantial evidence to support this
 finding.   
 The
 next requirement was altering the stormwater plan to show runoff being routed
 to the wetland system from several points.  Mikell stated that by redirecting
 the water, the wetlands were not likely to further retreat and would either
 stay the same or perhaps increase.  
The third requirement was replanting the wetland/buffer area to
 improve the screening features adjacent to the wetlands.  This screening will
 benefit the adjacent property owners and will grow over the years.  
The fourth requirement was HLP would purchase credits at an
 approved mitigation bank a sum to compensate for lost wetlands and buffer
 area.  Mikell calculated the payment would be approximately $20,000.  OCRMs
 mitigation guidelines allow for off-site mitigation if the mitigation will
 provide significant ecological benefit to the State of South Carolina.  Mikell
 testified that the mitigation banks to which HLP is required to purchase
 credits are all located in areas that the state have deemed worthy of being
 restored.  Thus, in his opinion, all of the banks have been identified as being
 of ecological benefit to the State.  
The
 final requirement was that the wetlands and buffers must be preserved using
 standard deed restrictions.  This requirement eliminates any uncertainty in the
 protection of the remaining wetlands.  
The ALJ held, OCRMs proposed mitigation plan would protect the
 remaining wetlands more effectively than preservation of the status quo. . . . 
 Given that the topography of the wetlands [has] changed since 1989, OCRMs
 proposed mitigation plan appropriately alters the status of the property upon
 reassessment of its physical characteristics.  We hold there is substantial
 evidence in the record to support this finding
The ALJ
 also considered the Residents argument concerning diminution of property
 values.  A property owner is competent to testify as to the value of his
 property.  Hawkins v. Greenwood Dev. Corp., 328 S.C. 585, 594-95, 493
 S.E.2d 875, 880 (Ct. App. 1997).  However, Myrtle Trace property owner Renzo
 Falcinelli only testified he believed his property value had gone down. 
 Neither he nor any other Resident provided actual evidence of the amount of a
 decrease in value.  They failed to offer evidence of sales of similar property
 showing the presence of a similar project in the coastal zone had materially
 and negatively impacted the value of adjacent owners property.  Falcinelli
 also testified about his loss of enjoyment of the use of his property due to
 the harvesting of the trees.  OCRMs requirement for replanting the buffer area
 should help restore the screening and alleviate some of his and the other
 owners concerns.  
The ALJ
 addressed Hall and Residents argument that the project is not consistent with
 the Coastal Zone Management Program because zoning approval has not been
 obtained.  As the ALJ noted, zoning compliance is just one of many factors set
 forth in the Coastal Zone Management Program Document for OCRM to consider. 
 Here, the local zoning authorities deferred action on HLPs rezoning request
 until HLP could receive clearance from OCRM to deviate from the previous buffer
 requirements.  We agree with the ALJ that the absence of zoning approval in
 this case did not render the project inconsistent with the Coastal Zone
 Management Program.  
The
 Coastal Zone Management Act and OCRMs Coastal Zone Management Program Document
 set forth the considerations to be utilized in achieving the states policy of
 balancing economic development and preservation of the environment.  Achieving
 this balance requires flexibility and contemplation of the actual circumstances
 involved in each projects permit application.  OCRM has allowed modification
 in other plans according to Mikell.  In this case, the wetlands on the area
 diminished significantly.  The current plan will allow for preservation of the
 remaining wetlands and in addition will provide for payment into the mitigation
 bank to allow for restoration and preservation of an area in need. 
 Accordingly, we find substantial evidence supports the ALJs decision a
 stormwater management plan that incorporates the requirements in OCRMs
 September, 1999 letter is consistent with the Coastal Zone Management Program.  
2.  Additional
 sustaining grounds
The
 circuit court ruled as an additional sustaining ground that the ALJ erred by
 refusing to consider fundamental principles of property law.  The court held
 that Roe had constructive and actual knowledge of the mitigation requirements
 prior to HLPs acquisition of the property.  However, the ALJ never held HLP
 was not bound by the prior mitigation restrictions.  In fact, OCRMs position
 was that the mitigation restrictions were in place and binding on HLP.  The
 requirement that HLP purchase credits in an off-site mitigation bank was to
 mitigate for the difference in the amount of wetlands in the original
 delineation and the current amount.  Although HLP initially contested OCRMs
 additional conditions, it later agreed to them and its notice of the mitigation
 site was not an issue.  
The
 circuit court also held the ALJ ignored the equitable, economic, and property
 interests of Hall and the Myrtle Trace residents.  As stated above, the extent
 to which the project affects the value and enjoyment of adjacent owners was a
 factor considered by the ALJ in determining whether the project was consistent
 with the Coastal Zone Management Program.  As we found above, the ALJs finding
 of consistency is supported by substantial evidence.  
To the
 extent the circuit court relied on other aspects of property law, we vacate
 these rulings.  The sole issue in this case is whether the HLP project is
 consistent with the Coastal Zone Management Program in order that HLP may
 receive a Stormwater permit to proceed with the project.  As the ALJ stated,
 any issues relating to real property law should be resolved in another forum.  
As
 another additional sustaining ground, the circuit court held the ALJ erred by
 turning a mere settlement proposal into a final staff decision.  OCRMs
 September of 1999 letter set forth the requirements that must be included in a
 revision of HLPs plans for the project.  Although the letter termed it a
 mitigation settlement plan, HLP was entitled to seek an administrative
 hearing on this matter.  See 26 S.C. Code Ann. Regs. 72-313(A)(5) (Supp.
 2007) (stating an administrative hearing is available to determine the
 propriety of the requirements imposed by the implementing agency for approval
 of the stormwater management and sediment reduction plan).  At this
 administrative hearing, Hall and the Residents were allowed to present their
 opposition to the project and were given an opportunity to be heard on the
 consistency of OCRMs proposed mitigation plan with the Coastal Zone Management
 Program in a contested case proceeding.  We find the circuit courts ruling was
 in error.   
CONCLUSION
We REVERSE the circuit courts affirmance of the DHEC
 Boards denial of HLPs permit application and reinstate the order of the ALJ
 allowing HLP to resubmit a stormwater plan including OCRMs additional
 conditions.  In addition, we VACATE the circuit courts rulings on
 property law issues.  
REVERSED
 IN PART; VACATED IN PART.
ANDERSON, HUFF, and KITTREDGE, JJ., concur.

[1] OCRM also required HLP to raise the outfall
 structure that is located adjacent to the canal in the Myrtle Trace
 Subdivision.  However, further review indicated this may cause flooding and
OCRM withdrew this condition.  
[2] During the pendency of the initial appeal to circuit
 court, the supreme court had issued an opinion restricting the Boards
 authority to make findings of fact.  See Brown v. S.C. Dept of Health & Envtl.
Control, 348 S.C. 507, 560 S.E.2d 410 (2002).  
[3]This case progressed under the procedures in place
 prior to 2006 revision of the Administrative
 Procedures Act, which omitted the appeals to the DHEC Board and the circuit
 court.  See Act. No. 387, 2006 S.C. Acts 3093, 3098-3103.  All citations
are to the former versions of the statutes found in the 2005 bound volume.