# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Blue Ridge Environmental Defense League, Appellant,

v.

South Carolina Department of Environmental Services and Dominion Energy, Respondents.

Appellate Case No. 2023-001351

―――――――――――

Appeal from the Administrative Law Court
Ralph King Anderson, III

―――――――――――

Opinion No. 28315
Heard June 24, 2025 – Filed January 28, 2026

―――――――――――

**AFFIRMED**

―――――――――――

Jesse Sanchez, of The Law Office of Jesse Sanchez, LLC, of Mount Pleasant; Stephen A. Spitz, of A Business Law Firm, of Charleston, both for Blue Ridge Environmental Defense League.

Elizabeth B. Partlow, of Law Offices of Elizabeth B. Partlow, LLC, of Columbia; Brooks M. Smith, of Troutman Pepper Locke, LLP, of Richmond, Virginia, both for Dominion Energy; Bennett W. Smith, Karen Christine Ratigan, and Christopher Patrick Whitehead, of South Carolina Department of Environmental Services, of Columbia, all for South Carolina Department of Environmental Services.

Elizabeth B. Partlow, of Law Offices of Elizabeth B. Partlow, LLC, of West Columbia; and Brooks M. Smith, of Troutman Pepper Hamilton Sanders, LLP, of Richmond, VA, both for Respondent Dominion Energy, Inc. Emily Wyche and Susan Ness Carlson, of Charleston, Amici Curiae for American Rivers, Black-Sampit Riverkeeper, Catawba Riverkeeper, Charleston Waterkeeper, Congaree Riverkeeper, Friends Of The Edisto, Pee Dee-Lynches Project Coordinator, Savannah Riverkeeper, Save Our Saluda, Waccamaw Riverkeeper and Winyah Rivers Alliance.

---

**PER CURIAM:** This is an appeal from an order of the administrative law court (ALC) granting the water quality certification necessary for Dominion Energy to obtain a federal permit to construct a natural gas pipeline near the Great Pee Dee River in Florence County.  We affirm.

## I.      Facts, Regulatory Framework, and Procedural History

Since the 1960's, Dominion Energy and its corporate predecessors have operated an 8-inch natural gas pipeline starting at River Neck Road east of the City of Florence where Dominion Energy receives natural gas from its suppliers.  The pipeline proceeds in a southeasterly direction within a 40-foot right-of-way between Old River Road and the Great Pee Dee River to the Town of Kingsburg.  At Kingsburg, the pipeline splits into multiple smaller pipelines, including one heading east to the Conway/Myrtle Beach area.  According to Dominion Energy's witnesses, the existing pipeline from River Neck Road to Kingsburg is no longer adequate to serve the increasing demand for natural gas due to residential and commercial growth in the market the pipeline serves.  Thus, Dominion Energy is required to supplement the amount of product it can deliver through the pipeline with compressed or liquified natural gas delivered by truck.  To accommodate current and anticipated future natural gas demand, Dominion Energy proposed a project to build a new, 16-inch pipeline running parallel with the existing pipeline, within the existing right-of-way after widening it by ten feet.

Under section 404 of the federal Clean Water Act, a permit issued by the U.S. Army Corps of Engineers is required for any activity involving the discharge "of dredged or fill material into the navigable waters."  33 U.S.C. § 1344(a).  The pipeline is set

to be constructed through or under several tributaries to the Great Pee Dee River,[1] including Jeffries Creek—a "navigable water"—requiring the discharge of dredged or fill material. Under section 401 of the Clean Water Act, "a certification from the State in which the discharge originates or will originate" is required as part of a section 404 permit application. 33 U.S.C. § 1341(a)(1). This state-level certification—a "401 Water Quality Certification"—is based on state-established procedures that ensure a project complies with the federal Clean Water Act. *Id.*; *see also* 40 C.F.R. § 131.12 (2015) ("The State shall develop and adopt a statewide antidegradation policy."). Thus, for Dominion Energy to obtain the necessary permit from the Corps of Engineers, it must first receive a 401 Water Quality Certification from the State of South Carolina.

Regulation 61-101 of the South Carolina Code of Regulations (Supp. 2025) establishes the "procedures and policies for implementing State water quality certification requirements of Section 401 of the Clean Water Act." Regs. 61-101(A)(1). Regulation 19-450 of the South Carolina Code of Regulations (Supp. 2025) outlines specific technical requirements for projects involving "navigable waters . . . of the state." Regs. 19-450.9. The South Carolina Department of Environmental Services[2] is the agency responsible for reviewing applications and issuing 401 Water Quality Certifications. Regs. 61-101(A)(2). After public notice and a hearing, the Department issued the 401 Water Quality Certification for the project. Blue Ridge requested the Department Board conduct a review of the decision, which it declined to do. Blue Ridge then requested a contested case hearing before the ALC. Following a three-day hearing, the ALC issued an order granting the 401 Water Quality Certification.[3]

---

[1] The pipeline will be installed under Jeffries Creek and through "Mills Branch, Bigham Branch, Briar Branch, Barfield Mill Creek, Bullock Branch, and other wetlands and unnamed tributaries."

[2] In 2023, the General Assembly created the South Carolina Department of Environmental Services to perform the services formerly handled by the South Carolina Department of Health and Environmental Control. Act No. 60, 2023 S.C. Acts 302.

[3] *See* S.C. Code Ann. § 1-23-600(G) (Supp. 2025) ("[T]he Administrative Law Court has jurisdiction to review and enforce an administrative process issued by an agency or by a department of the executive branch of government.").

Blue Ridge appealed the ALC's order to the court of appeals. While the appeal was pending, the Corps of Engineers issued Dominion Energy the necessary permit for the project. At the request of the court of appeals, this Court certified the case for our review pursuant to Rule 204(b), SCACR.

## II. Mootness

Dominion Energy argues the Corps of Engineers' issuance of its permit renders this appeal moot. Dominion Energy argues that federal law does not require the Corps of Engineers to take any action when a state withdraws its 401 Water Quality Certification for substantive reasons after the effective date of the federal permit. Rather, the Corps of Engineers "will review those reasons and consider whether there is substantial basis for suspension, modification, or revocation of the" federal permit. 33 C.F.R. § 330.4(c)(7) (2013). Under this regulation, the Corps of Engineers may determine "such attempted state withdrawal is not effective," and Corps of Engineers "will consider the state certification to be valid." *Id.* Dominion Energy argues that because a decision by this Court to revoke or reverse the 401 Water Quality Certification does not require the Army Corps of Engineers to withdraw the permit, the appeal is moot. *See S.C. Pub. Int. Found. v. S.C. Dep't of Transp.*, 421 S.C. 110, 121, 804 S.E.2d 854, 860 (2017) ("A case becomes moot when judgment, if rendered, will have no practical legal effect upon the existing controversy." (quoting *Sloan v. Greenville Cnty.*, 380 S.C. 528, 535, 670 S.E.2d 663, 667 (Ct. App. 2009))). We decline to resolve the appeal on the basis of mootness.

## III. 401 Water Quality Certification

Blue Ridge's substantive arguments that we should reverse the ALC are based entirely on its contention that key factual findings by the ALC are not supported by substantial evidence. *See* S.C. Code Ann. § 1-23-610(B) (Supp. 2025) ("The court may not substitute its judgment for the judgment of the administrative law judge as to the weight of the evidence on questions of fact. The court . . . may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is: . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."); *MRI at Belfair, LLC v. S.C. Dep't of Health & Env't Control*, 379 S.C. 1, 6, 664 S.E.2d 471, 474 (2008) ("As to factual issues, judicial review of administrative agency orders is limited to a determination whether the order is supported by substantial evidence."). In particular, Blue Ridge argues substantial evidence does not support the ALC's findings that (1) there is a need for the project and feasible alternatives were

considered; (2) water quality impacts from the project will be temporary; (3) there are no federally threatened or endangered species in the project area that will be affected by the project; (4) the project will impact only one state navigable water (Jeffries Creek); and (5) "environmental justice" concerns were considered. As we discuss below, the record is replete with evidence to support the ALC's factual findings. *See Kiawah Dev. Partners, II v. S.C. Dep't of Health & Env't Control*, 411 S.C. 16, 28, 766 S.E.2d 707, 715 (2014) ("In determining whether the ALC's decision was supported by substantial evidence, the Court need only find, looking at the entire record on appeal, evidence from which reasonable minds could reach the same conclusion as the ALC."). Thus, we disagree with Blue Ridge and affirm the ALC.

First, Blue Ridge argues the ALC's findings concerning project need and consideration of feasible alternatives are not supported by substantial evidence. At oral argument before this Court, Blue Ridge argued "there was zero expert testimony as to projected growth" and "zero evidence as to project need." The ALC determined the project was needed to serve Dominion Energy's current and anticipated natural gas demand. This factual finding is consistent with Dominion Energy's 401 Water Quality Certification application. Further, Dominion Energy project manager Robert Priester testified during the hearing that Dominion Energy must supplement the 8-inch pipeline to meet current gas demands. Priester also testified—"based on Dominion's experience"—to the anticipated growth of the area and the future need for natural gas.[4] While Blue Ridge argues Dominion Energy failed to present evidence of the number of trucks it uses to supplement the 8-inch pipeline or how often it must supplement the existing pipeline, this does not negate the ample evidence in the record that supports the ALC's finding that the project is needed.

Blue Ridge also argued at oral argument that the Department should have conducted "its own evaluation" concerning the need for the project. Subsection (F) of regulation 61-101 outlines the Department's review procedures for a 401 Water Quality Certification application. There is no requirement set forth in that regulation or otherwise that the Department conduct its own evaluation concerning need for a

---

[4] Because Blue Ridge did not object to the testimony concerning project need as improper lay witness testimony at the hearing, we do not address its argument that "there was zero expert testimony as to projected growth." *See Brown v. S.C. Dep't of Health & Env't Control*, 348 S.C. 507, 519, 560 S.E.2d 410, 417 (2002) ("[I]ssues not raised to and ruled on by the AL[C] are not preserved for appellate consideration.").

project.  Rather, the following factors are considered when assessing "water quality impacts" of a project: "(a) whether the activity is water dependent and the intended purpose of the activity; (b) whether there are feasible alternatives to the activity; [and] (c) all potential water quality impacts of the project, both direct and indirect." Regs. 61-101(F)(3).  Here, we have no difficulty agreeing with the ALC there is a need for this project, as it is frankly obvious the demand for natural gas in the area served by the pipeline has grown over the years and will continue to grow as this area continues to develop.

The ALC determined feasible alternatives for pipeline location were considered, including rejection of the "No Action" alternative—meaning the pipeline would not be constructed.  The ALC rejected the "No Action" alternative because it would not meet Dominion Energy's needs and, therefore, was not a feasible alternative for the project.  The ALC considered feasible alternatives for pipeline installation, including the use of open trench excavation and horizontal directional drilling at water crossings.[5]  Specifically, the ALC determined the use of horizontal directional drilling to cross under Jeffries Creek and open trench excavation at other water crossings decreased the overall environmental impact of the project.  These findings are consistent with the staff assessment, which demonstrates the Department and Dominion Energy discussed various installation methods for the project.  Priester also testified about the environmental and operational considerations of these installation methods.  Thus, we hold the ALC's findings are supported by substantial evidence.

Second, Blue Ridge argues the ALC's finding that water quality impacts from the project will be temporary is not supported by substantial evidence.  The staff assessment demonstrates the Department determined water quality impacts will be temporary and "will be minimized and should not contravene the water quality standards" outlined in regulation 61-68 of the South Carolina Code of Regulations (Supp. 2025).  *See* Regs. 61-68 (establishing state water quality standards).  This is consistent with Department representative Charles Hightower's testimony that "a temporary increase in turbidity levels"—or cloudiness—during construction is "not unusual" and "ambient conditions" should resume after construction.  Further, regulation 61-101(C)(3) states the Department "may require . . . water quality monitoring data."  Use of the word "may" signifies a discretionary act.  *See State v.*

---

[5] Here, open trench excavation involves installing the pipeline at a depth of four to five feet and horizontal directional drilling involves drilling under a creek bed at a greater depth to install the pipeline.

*Hill*, 314 S.C. 330, 332, 444 S.E.2d 255, 256 (1994) ("The word 'may' ordinarily 'signifies permission and generally means the action spoken of is optional or discretionary.'" (quoting *Robertson v. State*, 276 S.C. 356, 358, 278 S.E.2d 770, 771 (1981))). Thus, we hold the ALC's findings are supported by substantial evidence.

Third, Blue Ridge argues the ALC's finding that federally threatened or endangered species located in the project area will not be affected by the project is not supported by substantial evidence. Blue Ridge members expressed general concerns about how the project would impact federally protected species during the notice periods. South Carolina Department of Natural Resources employee Greg Mixon also submitted a letter to the Department outlining several areas of concern and recommendations. The staff assessment demonstrates the Department considered Mixon's letter and the public comments by incorporating several conditions in the 401 Water Quality Certification and Mixon testified the conditions satisfied the Department of Natural Resources' concerns. The ALC noted "the U.S. Fish and Wildlife Service determined the Project would have 'no effect' on federally threatened or endangered species," and the ALC found "there is no evidence" the project "will negatively 'affect the habitats of rare and endangered species of wildlife,'" quoting regulation 19-450.9(A)(3) of the South Carolina Code of Regulations (Supp. 2025). At oral argument before this Court, Blue Ridge could point to no evidence in the record to demonstrate how the project would affect threatened or endangered species. Thus, we hold the ALC's findings are supported by substantial evidence.

Fourth, Blue Ridge argues the ALC's finding that the project will not impact state navigable waters is not supported by substantial evidence because it presented "unrebutted testimony" that waters the pipeline must cross in addition to Jeffries Creek are state navigable waters. "[N]avigable waters of the state" subject to regulation 19-450 are defined as, "waters which are now navigable, or have been navigable at any time, or are capable of being rendered navigable by the removal of accidental obstructions, by rafts of lumber or timber or by small pleasure or sport fishing boats. Navigability shall be determined by the Department." Regs. 19-450.1(A); 19-450.2(C). The staff assessment indicates the Department determined Jeffries Creek is the only state navigable water the project will cross. This is consistent with the Department's Water Quality Certification and Wetlands Project Manager William Wenerick's testimony during the hearing. While Blue Ridge member Gail Andrews testified during the hearing that she previously rode on a "fishing boat with a motor on it" on multiple bodies of water the project will cross, she did not testify that she rode in the exact location of the project area. Regardless, navigability under regulation 19-450 is determined by the Department. *See* Regs.

19-450.2(C). Further, because Dominion Energy will use horizontal directional drilling to cross *under* Jeffries Creek instead of open trenching through Jeffries Creek, the project will not impact navigability of the state navigable water. *See* Regs. 19-450.4(A)(7) (2011) ("The permitted activities shall not block or obstruct navigation or the flow of any waters . . . ."). Thus, we hold the ALC's finding is supported by substantial evidence.

Fifth, Blue Ridge argues the ALC's findings that "environmental justice" concerns were considered are not supported by substantial evidence. "The purpose of an environmental justice analysis is to determine whether a project will have a disproportionately adverse effect on minority and low income populations." *Mid States Coal. for Progress v. Surface Transp. Bd.*, 345 F.3d 520, 541 (8th Cir. 2003). While the ALC determined "environmental justice" concerns were considered, it also noted such concerns are not required when reviewing a 401 Water Quality Certification. Neither regulation 19-450 nor regulation 61-101 requires consideration of "environmental justice" concerns. Thus, we hold the ALC appropriately determined "environmental justice" considerations are not required.

## IV. Conclusion

For the reasons explained above and the abundant evidence in the record, we affirm the ALC.

**AFFIRMED.**

**FEW, Acting Chief Justice, JAMES, HILL, VERDIN, JJ., and Acting Justice Grenville D. Morgan, Jr., concur.**