569 S.E.2d 330

**Gene Tony COOPER, Jr., Respondent,**

**v.**

**Michael MOORE, Commissioner, South Carolina Department of Corrections, Petitioner.**

No. 25512.

Supreme Court of South Carolina.

Heard June 13, 2002.

Decided Aug. 12, 2002.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, all of Columbia, for petitioner.

David I. Bruck, of Columbia; and Stuart M. Andrews, Jr., of Nelson Mullins Riley & Scarborough, L.L.P., of Columbia, for respondent.

Acting Chief Justice MOORE.

We granted this petition for a writ of certiorari to determine whether the post-conviction relief (PCR) court erred by finding S.C.Code Ann. § 16–3–28 (1985 & Supp.2001), applies to non-capital crimes and whether the court erred by finding respondent was prejudiced by counsel's alleged deficient performance. We affirm.

## FACTS

In the early morning of October 6, 1989, Kimberly Quinn (the victim) was discovered missing from her home. Her empty wallet was found in the yard of the home. At 9:17 a.m., the victim's forged welfare check was cashed at a bank.

The remains of the victim were discovered two days later. She had suffered shotgun wounds to the head, neck, and back. After her murder, the victim's hands and feet were severed with an ax and her body was set on fire with gasoline. The hands and feet were subsequently discovered in a nearby creek, along with an ax owned by respondent.[1]

---

1. The fact the ax had been in respondent's truck at some point in time was stipulated to at trial.

Respondent was convicted of murder, kidnapping, armed robbery, and conspiracy to commit armed robbery. He was acquitted of forgery. He was sentenced to death. He was also sentenced to imprisonment terms of twenty-five years for armed robbery and five years for conspiracy to commit armed robbery. On direct appeal, we affirmed his convictions for armed robbery and conspiracy, reversed his murder conviction and death sentence, and remanded to the trial court. *State v. Cooper*, 312 S.C. 90, 439 S.E.2d 276 (1994).[2] The Court concluded, after conducting an *in favorem vitae* review, that respondent's contention that the failure to obtain an on-the-record waiver of his right to personally address the jury mandated reversal of the murder conviction and death sentence. We denied respondent's petition for rehearing which stated all his convictions should have been vacated.[3]

Respondent's PCR application, raising issues concerning his right to make a guilt phase closing argument regarding his non-murder convictions, was granted by the PCR court.

## ISSUES

I. Did the PCR court err by finding S.C.Code Ann. § 16–3–28 (1985 & Supp.2001), applies to non-capital crimes?

II. Did the PCR court err by finding respondent was prejudiced by counsel's alleged deficient performance?

## DISCUSSION

### I

■ Respondent argued at his PCR hearing that he was entitled to a new trial on his non-capital convictions because he did not knowingly and intelligently waive his right to personally address the jury in the guilt phase of his trial. The PCR court granted him relief.

The State argues that because respondent's murder conviction was reversed on direct appeal, the PCR court erred in

---

**2.** *Overruled in part by Franklin v. Catoe*, 346 S.C. 563, 552 S.E.2d 718 (2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 2332, 153 L.Ed.2d 162 (2002).

**3.** The State has not retried respondent on the murder charge.

granting relief on respondent's other convictions because he did not have the right to personally address the jury on those convictions.[4]

Section 16–3–28 provides that *"in any criminal trial where the maximum penalty is death* or in a separate sentencing proceeding following such trial, the defendant and his counsel shall have the right to make the last argument."  S.C.Code Ann. § 16–3–28 (1985 & Supp.2001) (emphasis added).

In respondent's direct appeal, *State v. Cooper,* 312 S.C. at 91, 439 S.E.2d at 277, n. 2,[5] and in the case of *State v. Charping,* 313 S.C. 147, 150, 437 S.E.2d 88, 90 (1993),[6] the defendants' murder convictions were reversed for the lack of a waiver of the statutory right to make a personal statement. The other convictions were deemed unaffected by trial errors raised for the first time on appeal, and were thus affirmed.

Because *Cooper* and *Charping* were decided under *in favorem vitae* review, we considered only the murder conviction. Issues raised regarding the non-capital convictions could not be raised for the first time on appeal.   Although the end result

---

**4.**   We found it unnecessary to address this question in *Franklin v. Catoe, supra,* because Franklin had failed to prove he was prejudiced by the lack of a knowing waiver of the right to make a closing statement in the guilt phase of his death penalty trial.

**5.**   In *Cooper, supra,* we reversed respondent's murder conviction because the trial judge failed to obtain an on-the-record waiver of respondent's right to personally address the guilt phase jury.   312 S.C. at 91, 439 S.E.2d at 277.   We affirmed respondent's non-capital convictions on the basis that the error as to those convictions was not preserved for review.   In footnote 1, we noted that, after *State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991), which abolished *in favorem vitae* review, errors that are not appropriate for direct appeal must now be raised in applications for post-conviction relief.   *Id.* at 92, 439 S.E.2d at 277.

**6.**   *Overruled in part by Franklin v. Catoe, supra.*   In *Charping, supra,* we reversed Charping's murder conviction because there was not a knowing and voluntary waiver of Charping's right to make the final argument to the jury in the guilt phase.   *Charping,* at 149, 437 S.E.2d at 89. Since trial counsel failed to object to the lack of a waiver, Charping's other non-capital convictions were affirmed because they were "unaffected by trial errors raised for the first time on appeal."   *Id.* at 149, 437 S.E.2d at 90.   Because *Charping* was decided under *in favorem vitae,* we reversed only the murder conviction and affirmed the non-capital convictions because the error as to those was not preserved for review.

in *Charping* and *Cooper* was that only the murder conviction was reversed, we did not hold that non-capital convictions could not be reversed in a situation such as respondent's where a capital defendant, who is also charged with non-capital crimes, is denied his right to make a guilt phase closing statement.

In any event, from the plain language of § 16–3–28, it is clear the General Assembly never intended to limit that section to only those charges that carry a possible death penalty, but instead intended for the capital defendant to have the right to address the jury regarding all of his charges in a capital trial, whether all of the charges carry the death penalty or not.

The primary rule of statutory construction is that the Court must ascertain the intention of the legislature. *Kerr v. State,* 345 S.C. 183, 547 S.E.2d 494 (2001). Where the terms of the statute are clear, the court must apply those terms according to their literal meaning, without resort to subtle or forced construction to limit or expand the statute's operation. *Id.*

Section 16–3–28 gives a defendant the right to address the jury "in any criminal trial where the maximum penalty is death." The plain language of the statute makes it clear that a defendant's right to address the jury during the guilt phase of his trial applies only if the defendant is facing a charge that carries the death penalty. However, section 16–3–28 does not limit the defendant's argument to only those charges that carry a possible death penalty but simply states "in any criminal trial where the maximum penalty is death," meaning that the capital defendant has the right to address the jury regarding all of his charges, whether they carry the death penalty or not. From the plain language of § 16–3–28, we hold respondent had the right to make a guilt phase closing argument concerning not only the murder charge, but the non-capital charges as well.

Accordingly, the PCR court did not err by finding that § 16–3–28 applies to non-capital charges.

## II

The State argues the PCR court erred by finding respondent was prejudiced by counsel's alleged deficient performance.

Before respondent's trial commenced, the judge informed the jury venire in respondent's presence that "[w]hen all of the evidence has been received by the court, counsel for the state and counsel for the defendant *and the defendant himself,* if he elects to do so, will state for the jury their respective positions in a summation or a final argument." (Emphasis added). Moments later, the trial judge reiterated to the jury venire that respondent himself had the right to make a final closing argument.

At the close of all the evidence, the trial judge explained to the jury that the next thing they would hear would be "arguments by the attorneys," without stating respondent had a right to make an argument as well.

After the jury found respondent guilty, the trial entered the sentencing phase. During this phase, the judge asked respondent if he understood he had the right to argue to the jury along with his attorneys. Respondent stated he understood that he had that right. The judge also ensured that respondent's decision not to address the jury at this stage was his decision alone.

In his PCR application, respondent alleged he was denied the effective assistance of counsel because he was not advised of his statutory right to make a guilt phase closing argument to the jury.

At the PCR hearing, trial counsel, Jack Duncan, testified he did not discuss the right with respondent because he did not know of the right. Duncan stated if respondent had known about his right to address the jury during the guilt phase, respondent would have made a statement. He stated respondent did not testify at trial because of his prior criminal record and that respondent did not make a penalty phase statement because, at that point, he had lost interest in the trial after being found guilty of a crime he claimed he did not commit.

H. Patterson McWhirter, respondent's other counsel, testified that, although he was aware of the right to personally

address the jury during the guilt phase, he did not remember whether respondent was informed of the right. McWhirter acknowledged respondent was capable of addressing the jury and that he would have made some good, logical arguments about the evidence.

Respondent testified he did not know and neither counsel nor the trial judge informed him he had the right to make a guilt phase statement. As for the trial judge's comments to the jury venire, respondent stated if the judge said anything about the right it did not register with him because the judge did not address him directly and discuss the right with him. He stated that, had he known of the right, he would have addressed the jury. Specifically, respondent stated he would have defended himself by discussing all the evidence the solicitor had presented in court. He testified he would have mentioned every charge and allegation and let the jury know he was not guilty of the crimes of which he was charged. He also wanted the jury to see he was not a "crazy person." Respondent indicated, while he knew of the right to make a statement during the penalty phase, he chose not to make a statement because he felt there was nothing to say after he had been convicted of a crime he did not commit.

■ The PCR court found respondent was denied the effective assistance of counsel when he was not advised of and was denied his statutory right to make a guilt phase closing argument. Further, the PCR court found respondent was not required to show he was prejudiced in order to get relief;[7] however, the PCR court found, in any event, that respondent was prejudiced by the denial of his right to address the jury.

■ The burden is on the applicant in a post-conviction proceeding to prove the allegations in his application. *Butler v. State,* 286 S.C. 441, 334 S.E.2d 813 (1985), *cert. denied,* 474 U.S. 1094, 106 S.Ct. 869, 88 L.Ed.2d 908 (1986). As to allegations of ineffective assistance of counsel, an applicant must first show his counsel's representation fell below an objective standard of reasonableness and then show he was

---

7. The State argues the PCR court erred by finding respondent was entitled to relief absent any proof he was prejudiced. Given our recent decision in *Franklin v. Catoe, supra,* we agree respondent must show prejudice.

prejudiced by the substandard performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Jordan v. State*, 297 S.C. 52, 374 S.E.2d 683 (1988). In reviewing a grant of PCR, the Court is concerned only with whether there is any evidence of probative value to support the PCR court's decision. *Palacio v. State*, 333 S.C. 506, 511 S.E.2d 62 (1999). If any evidence of probative value is found, this Court must affirm the ruling of the PCR court. *Id.*

■ Here, counsel were deficient for failing to inform respondent of his statutory right to make a closing statement to the jury during the guilt phase of his trial. Therefore, the only issue is whether respondent was prejudiced by counsel's deficient performance.

■ In *Franklin v. Catoe, supra*, we found Franklin was not prejudiced by the failure to acquire a waiver of Franklin's right to make a personal argument to the jury during the guilt phase of his trial. Respondent's case is distinguishable. In *Franklin*, we found Franklin was not prejudiced by the lack of a waiver because the evidence of guilt was overwhelming [8] and because the jury had already heard him arguing for his innocence when Franklin testified and the jury had the opportunity to hear and consider his side of the story during that testimony. *Franklin*, 346 S.C. at 573–575, 552 S.E.2d at 724–725. However, in the instant case, respondent did not testify before the jury. Therefore, the jury did not have the opportunity to hear him argue for his innocence or to hear and consider his side of the story as occurred in *Franklin*. Further, the evidence against respondent was mostly circumstantial and not overwhelming.

The following facts were used by the State to attempt to show the jury respondent may have been involved in the crimes. A friend of the victim's testified when she came to the victim's house the morning after the victim disappeared she saw Budweiser beer cans in the living room. She stated these

---

8. The evidence of guilt was the following: (1) Franklin's own testimony placed him at the scene of the crime; (2) his bloody palm print was found on the fan that had been used to crush the victim's head; (3) his semen was on the victim's body; (4) necklaces belonging to the victim were found in his possession; and (5) blood on his pants matched blood found on the fan and the victim.

cans, which were not the victim's brand of beer, were not in the house the day before. On cross-examination, respondent's wife testified respondent drank Budweiser. Budweiser beer cans were also found in and around the area where the victim's body was found.[9]

The victim's friend testified a welfare check she had seen the afternoon before on top of the victim's television was missing. Another friend testified the victim's wallet was found in the victim's driveway without any money in it. On October 6, at 9:17 a.m., someone forged the victim's signature and cashed her welfare check.[10]

While no blood was found inside respondent's truck, the interior of his truck, including the back window, had been freshly painted black. Respondent's wife testified respondent had discussed painting the truck around Labor Day, but did not paint it until October 8. She stated he painted it because he wished to cover up the Rebel Flag that was on the back windshield.

Respondent owned the ax that had been used to remove the victim's hands and feet following her murder. However, evidence was presented that Bo Southerland had the ax in his possession at the time of the crimes.

Two witnesses testified they saw a Mercury Cougar containing two male passengers acting suspiciously on October 5. The Cougar was seen in an apartment complex located across the street from the victim's home. One witness described the car's occupants but could not identify respondent as one of the

---

9. *Compare State v. Schrock,* 283 S.C. 129, 322 S.E.2d 450 (1984) (defendant entitled to directed verdict of not guilty based on lack of evidence where, among other things, nothing in evidence placed defendant at scene of crime and State could not establish that Marlboro cigarettes found at scene had been smoked by defendant).

10. Robert (Bo) Southerland was convicted of murder, kidnapping, armed robbery, and *forgery* in connection with the victim's murder. He was sentenced to death for the murder conviction. His convictions and sentences were affirmed on direct appeal. *State v. Southerland,* 316 S.C. 377, 447 S.E.2d 862 (1994), *cert. denied,* 513 U.S. 1166, 115 S.Ct. 1136, 130 L.Ed.2d 1096 (1995). Following the denial of his PCR application, the Court partially reversed the PCR court's denial and remanded the matter for a new sentencing hearing. *Southerland v. State,* 337 S.C. 610, 524 S.E.2d 833 (1999). Southerland has not been re-sentenced.

occupants. The other witness identified respondent as the passenger of the Cougar. Evidence was presented that respondent owned the Cougar but had loaned it to Bo Southerland.

A friend of Bo Southerland's testified that, on the evening of October 5, Southerland was at his automobile repair shop and had parked the Cougar there. He stated, around 9:30–10:30 p.m., Southerland left with respondent in respondent's truck. Around midnight, the friend left the shop and noticed the Cougar was still there but Southerland was not. Another witness, who lived near the shop, testified he saw the Cougar at the shop around 7:00 p.m. and that Southerland was there. The next morning, around 7:00 a.m., he noticed the Cougar was still parked in the same spot. The witness indicated that Southerland lived about ¼ mile from the shop.

The only direct evidence of respondent's involvement in the crime of conspiracy came from respondent's alleged co-conspirator, Red Farmer. Farmer, who was incarcerated, testified he conspired with respondent to rob the victim. Farmer stated he called respondent at his house around 7:30 p.m. on October 4. He told respondent the victim would be receiving a $2800 check and that respondent could rob her. Respondent allegedly agreed. Farmer testified that, on October 6, he called respondent. During this phone call, respondent allegedly stated Farmer's intelligence was wrong, that "she did not have $2800," that he completed the construction job he was working on and had burned the excess material. Respondent said he was pleased with the job and did not see any complications. Farmer testified he understood this to mean that the robbery had been completed, the victim had been killed, and the body had been burned. The State introduced telephone records which supported Farmer's testimony.

The defense presented evidence that respondent did not have any financial problems and had recently received an insurance settlement in the approximate amount of $3,274.

If respondent had been given the opportunity to personally address the jury, there is a reasonable probability the result of his trial on the non-capital charges would have been different. Respondent wanted to tell the jury he was not guilty of the charged crimes and to show them he was not a "crazy person."

Given that the evidence against respondent was not overwhelming, respondent's statement could have swayed the jury to find respondent not guilty on his non-capital charges.[11] Respondent was entitled to argue his innocence to the jury and let them consider his side of the story. Had he been given this chance, there is a reasonable probability the result of his trial would have been different. *See Johnson v. State*, 325 S.C. 182, 480 S.E.2d 733 (1997) (to show prejudice, applicant must show, but for counsel's errors, there is reasonable probability result of trial would have been different).

Therefore, there was evidence of probative value to support the PCR court's conclusion that respondent was prejudiced by trial counsel's failure to advise respondent of his right to make a guilt phase closing argument. *See Palacio v. State, supra.*

## CONCLUSION

We find § 16-3-28 applies to non-capital charges when a defendant is on trial for a capital charge and that respondent was prejudiced by his attorneys' failure to inform him of his statutory right to make a guilt phase closing statement to the jury. Therefore, the order of the PCR court is **AFFIRMED.**

WALLER, BURNETT, JJ., and Acting Justice GEORGE T. GREGORY, JR., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES:

I concur. In my dissent in *Franklin v. Catoe*, 346 S.C. 563, 552 S.E.2d 718 (2001), I concluded that a capital defendant, denied his statutory right to address the jury at the close of the guilt phase of his trial, was not entitled to be retried on his non-capital charges. *Id.* at 579–580, 552 S.E.2d at 727. As the majority opinion persuasively demonstrates, I was wrong. I continue to believe, however, that a capital defendant "denied the opportunity to exercise a statutory right afforded him by our death penalty statutes [12]" is *ipso facto* entitled to a new

---

11. The jury deliberated over two days for approximately eight hours.

12. S.C.Code Ann. §§ 16-3-20 through—28 (Supp.2001).

proceeding, and therefore would not engage in a *Strickland*[13] prejudice analysis here.

I concur in the majority's decision to affirm the post-conviction relief judge's order granting respondent a new trial on the charges of kidnapping, armed robbery, and conspiracy to commit armed robbery.

---

**13.** *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).