660 S.E.2d 291

**Allan S. TERRY, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Office of Ocean and Coastal Resource Management, and South Carolina Department of Archives and History, Respondents.**

No. 4366.

Court of Appeals of South Carolina.

Submitted March 3, 2008.

Decided April 3, 2008.

---

**3.** We decide this case without oral argument pursuant to Rule 215, SCACR.

C.C. Harness, III, of Mt. Pleasant, for Appellant.

Carlisle Roberts, Jr., of Columbia, Evander Whitehead, of Charleston, and James S. Chandler, Jr., of Pawley's Island, for Respondents.

HEARN, C.J.

Allan S. Terry (Landowner) appeals the decision of the Coastal Zone Management Appellate Panel (Appellate Panel) affirming the order of the Administrative Law Court (ALC) which upheld the Office of Ocean and Coastal Resource Management's (OCRM) denial of his application for a recreational dock permit. We affirm.

## FACTS

In June 1991, Tamsburg Properties (Developer) applied to the Coastal Council for a permit to install ten private docks, one community dock, and a community boat ramp within Bakers Landing, a proposed residential subdivision in Dorchester County along the shoreline of the Ashley River.[1] Developer's application to build multiple docks generated controversy among the interested parties, and extensive discussions took place involving OCRM staff, Developer, and public agencies. A public hearing on the application was also held. During this same time, planning was underway to create a Special Area Management Plan (SAMP) to conserve the natural and historic character of the Ashley River corridor, an area that now includes the Bakers Landing subdivision.

On February 6, 1992, Coastal Council's Permitting Committee issued a permit to Developer authorizing installation of eight private docks and one community dock. The Coastal Council conditioned the permit upon Developer's agreement to the following conditions: a community boat ramp would not be built; the community dock would not be used for permanent moorage; pier heads would not be located over wetlands vegetation; and no additional docks or modifications to permitted docks would be allowed within the boundaries of the subdivision. Because there was no appeal of OCRM's issuance of this permit to Developer, it became a final agency decision.

In 1998, Landowner purchased a lot in Bakers Landing that bordered a tributary of the Ashley River.[2] In 2002, he applied for a permit to construct a dock. Based on the pre-existing, special conditions permit OCRM issued to Developer in 1992, OCRM denied Landowner's permit application in a letter dated August 9, 2002, which stated:

OCRM, in its 1991 review of a multiple dock application made by the developers of Bakers Landing, Tamsberg Properties (91–3D–185–P), conditionally limited the develop-

---

1. The South Carolina Coastal Council was subsequently incorporated into OCRM within the Department of Health and Environmental Control (DHEC).

2. In documents Landowner filed with his dock permit application, he stated he paid the fair market value of $65,000 for his lot in 1998.

ment to 8 private docks and 1 community use dock, to which [D]eveloper agreed. The 1991 general dock permit served as the Dock Master Plan for all docks within the Bakers Landing Development, and consequently must be used as a framework for subsequent permitting decisions. The [Landowner's] application goes against the terms of the [Developer's] permit and is a piecemeal attempt to permit additional docks where OCRM has already acted. Therefore, OCRM staff has determined that this application must be denied.

Landowner requested a contested case hearing before the Administrative Law Court (ALC).[3] The ALC upheld OCRM's denial of the permit application, and Landowner appealed to the Appellate Panel. The Appellate Panel found no error of law and held that substantial evidence in the record supported the ALC's decision. This appeal followed.

## STANDARD OF REVIEW[4]

In administrative law cases, the ALC serves as the fact-finder and is not restricted by the findings of the administrative agency. *Dorman v. Dep't of Health & Envtl. Control*, 350 S.C. 159, 164, 565 S.E.2d 119, 122 (Ct.App.2002); S.C.Code Ann. § 1–23–600(A)–(B) (Supp.2007). An aggrieved party may appeal the ALC's decision to the agency's Appellate Panel; however, the Panel's review is confined to the record and is governed by South Carolina Code section 1–23–610(C). Accordingly, the Appellate Panel can reverse the ALC's decision if it determines the ALC's findings are not supported by substantial evidence contained in the record or are affected by

---

3. The South Carolina Department of Archives and History intervened in support of OCRM's denial of Landowner's dock permit, contending "the proposed dock would cause undue adverse impacts on the historical and cultural values of the Ashley River Historic District, would be inconsistent with the Ashley River Special Area Management Plan, and thus would violate the Coastal Zone Management Act and the OCRM regulations."

4. The procedural posture of this case is unique because the ALC and the Appellate Panel heard Landowner's appeal prior to the passage of 2006 Act No. 387, which was enacted to provide a uniform procedure for hearing contested cases and appeals from administrative agencies. Act 387 became effective on July 1, 2006 and amended the South Carolina Code sections referenced in this opinion. *See* 2006 Act No. 387.

an error of law. *Dorman* at 165, 565 S.E.2d at 122; *see also Grant v. S.C. Coastal Council,* 319 S.C. 348, 353, 461 S.E.2d 388, 391 (1995) (stating the ALC's findings are supported by substantial evidence if, looking at the record as a whole, there is evidence from which reasonable minds could reach the same conclusion the ALC reached).

After an aggrieved party has exhausted all administrative remedies, the party is entitled to judicial review by the South Carolina Court of Appeals. *See* S.C.Code Ann. § 1–23–380(A) (Supp.2007). Judicial review is confined to the record and is governed by South Carolina Code section § 1–23–380(A)(5), which provides:

> The court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. [However,] [t]he court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) affected by other error of law; (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

## LAW/ANALYSIS

### A. 1992 Permit as a Basis for OCRM's Denial

Landowner argues the basis for OCRM's denial of his application for a dock permit was improper. We disagree.

First, Landowner contends OCRM improperly denied his application because regulations controlling Dock Master Plans (DMPs) did not exist when OCRM issued a permit to Developer in 1992. Richard Chinnas, who served as Coastal Council's permitting coordinator in 1992, testified the Council began implementing a comprehensive approach to dock master planning in 1987 under its general permitting authority. At that time, the Coastal Council authorized multiple dock

permits, which it characterized as "DMPs," although the process governing DMPs was not formalized until 1993. Chinnas testified the Coastal Council's permitting authority allowed it to issue Developer a permit prohibiting installation of additional docks and the permit continued to be enforceable, whether it was called a DMP or a general permit.[5]

Our review of the record shows substantial evidence supports the ALC's finding that OCRM properly denied Landowner's permit application based on the special provisions contained in the permit the Coastal Council issued to Developer in 1992.

## B. Evaluation of Permit Application on its Merits

Landowner argues OCRM failed to consider his permit application on its individual merits and contends Developer's permit expired in 1995. We disagree.

■ OCRM's letter of August 9, 2002 stated the basis for denying Landowner's permit application was the 1992 permit issued to Developer, which was conditioned upon there being no additional docks in the subdivision. OCRM's letter also indicated the statutes and regulations it relied upon in denying Landowner's application.

The ALC's order stated its decision to uphold OCRM's denial of the permit was based on the unique facts of this case, and upon:

> overriding considerations flowing from Regs. 30–11(C)(1) (the need to consider the extent to which long-range, cumulative effects of the project may result within the context of other possible development and the general character of the area) and Regs. 30–11(C)(2) (the need to consider the extent to which the overall plans and designs can be submitted together and evaluated as a whole, rather than submitted piecemeal and in a fragmented way which limits comprehensive review).

5. In our review of the record, we note the Coastal Council's 1991 minutes referred to its consideration of a "dock master plan" for Bakers Landing.

The ALC concluded granting Landowner's permit application was "simply incompatible" with the consideration owed these regulations.

Chinnas testified the Coastal Council issued dock permits containing special conditions when it was possible to review all potential impacts at the time a new development was proposed in order to avoid future "piecemeal" applications. He stated this type of permit "gave us the opportunity to cumulatively review the whole project, essentially lock the project in" when the proposed development was "still a piece of raw land." Chinnas also testified the permit's expiration date governs only the construction period and the conditions remain enforceable until they are amended.

We find substantial evidence in the record supports the ALC's finding that OCRM reviewed Landowner's application on its individual merits, yet within the context of the 1992 permit prohibiting additional docks.

## C. Ashley River SAMP

 On appeal to this court, Landowner asks us to consider the specific policies of the Ashley River SAMP.[6] However, OCRM's letter denying Landowner's permit application, the ALC's decision, and the Appellate Panel's ruling each stated the permit's denial was based upon the original dock plan issued to Developer in 1992 and on consideration of the applicable regulations; the orders did not address the SAMP policies. Accordingly, this issue is not preserved for our review. *See Brown v. S.C. Dep't. of Health and Envtl. Control*, 348 S.C. 507, 519, 560 S.E.2d 410, 417 (2002) ("[I]ssues not raised to and ruled on by the agency are not preserved for judicial consideration. Likewise, issues not raised to and ruled on by the ALJ are not preserved for appellate consideration.").

---

6. On February 14, 1992, this section of the river was designated as being within the SAMP. Chinnas testified the Coastal Council's decision to issue a special conditions permit to Developer was not driven by SAMP and, in fact, had SAMP been the driving factor in its decision, the resulting permit would have granted only one dock.

## D. Subsequent Events

Landowner contends the special conditions contained in OCRM's 1992 permit are "rendered moot by multiple amendments." We disagree.

A review of the record shows OCRM had allowed some minor changes to be made to the nine docks constructed under Developer's 1992 permit; these changes include the addition of safety rails, navigation lights, and benches to the existing docks. Yet, the record also shows OCRM denied several applications to modify existing docks, and some dock owners had modified their docks without seeking a permit.

Chinnas testified the ALC authorized one additional dock under a consent order to resolve confusion related to the placement of a joint dock under the 1992 permit. However, he also stated the ALC's consent order did not constitute a modification to the permit's special condition prohibiting additional docks.

The ALC's order expressly addressed both subsequent modifications to existing docks and the ALC's consent order authorizing one additional dock; however, the ALC dismissed Landowner's argument as unpersuasive:

I have given consideration to the fact that modifications have occurred to the existing docks and that at least one dock has been added beyond the nine originally authorized. However, the addition of handrails to many docks has resulted from safety concerns and the other modifications have not been extensive. Further, only one new dock added since the original dock plan was issued was a dock which arose due to extenuating circumstances. Even that dock was not allowed until a consent order was executed through the ALC. Thus, there is no evidence of wholesale additions of docks to the subdivision. Accordingly, the denial of [Landowner's] dock is not inconsistent with the past practice of OCRM in Bakers Landing.

Chinnas testified Bakers Landing has ten waterfront lots that are currently restricted from building docks by Developer's 1992 permit. The Homeowner's Association stated in a letter to OCRM that if it granted Landowner's application "equity would require that all properties in Bakers Landing

that border on the river or marsh should be granted permits upon application."

We agree with the ALC's conclusion that minor modifications to the nine permitted docks and a consent order allowing the addition of one dock during the fifteen years following issuance of Developer's permit is not sufficient to warrant alteration of the conditions OCRM placed on the 1992 permit.

## CONCLUSION

We find the final order of the ALC was unaffected by an error of law and that substantial evidence in the record supports its order upholding OCRM's denial of Landowner's application for a dock permit. Accordingly, the final order of the Appellate Panel is

**AFFIRMED.**[7]

PIEPER, J., and CURETON, A.J., concur.

---

7. We decide this case without oral argument pursuant to Rule 215, SCACR.