671 S.E.2d 646

**OAKWOOD LANDFILL, INC. and Hickory Hill Landfill, Inc., Appellants,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL and T & T Disposal, LLC, Respondents.**

**No. 4485.**

Court of Appeals of South Carolina.

Heard Oct. 9, 2008.

Decided Jan. 12, 2009.

124

James W. Potter, Leon C. Harmon and Joan W. Hartley, all of Columbia, for Appellants.

Alex G. Shissias, John A. Hodge and Etta R. Williams, all of Columbia, for Respondents.

SHORT, J.

Oakwood Landfill, Inc. (Oakwood) and Hickory Hill Landfill (Hickory Hill) appeal two orders of the South Carolina Board of Health and Environmental Control (the Board) affirming a landfill permit issued to T & T Disposal, LLC (T & T) by the South Carolina Department of Health and Environmental Control (DHEC). We affirm.

## FACTS

Sections 44–96–10 to 44–96–470 of the South Carolina Code are known as the South Carolina Solid Waste Policy and Management Act (SWPMA). S.C.Code Ann. §§ 44–96–10 to– 470 (2002). Section 44–96–80(A) of the South Carolina Code requires each county in the State to prepare a single county solid waste management plan or participate in a regional solid waste management plan. S.C.Code Ann. § 44–96–80(A) (2002). Jasper County, South Carolina, elected to participate in a regional plan through the Low Country Council of Governments (LCCG), which drafted the Low Country Regional Solid Waste Management Plan (Low Country Plan) in 1994.

The Low Country Plan was endorsed by Beaufort, Colleton, Hampton, and Jasper Counties. The Plan states that "[b]ased on the amount of disposal capacity available in and around the Lowcountry there is no apparent need to construct new domestic or inert landfill facilities in the next 20 years." The Plan also provides the "required annual reports due September 1 of each year will represent the extent of progress over a given year and set forth any necessary revisions or amendments."

The SWPMA also provides "[n]o person shall operate a solid waste management facility without a permit from [DHEC]." S.C.Code Ann. § 44–96–290(A) (2002). Pursuant to SWPMA, on June 30, 2003, T & T filed a permit application with DHEC requesting a Construction and Demolition, and Land–Clearing Debris Landfill Permit (landfill permit) to construct a landfill in Jasper County. DHEC conducted a public hearing for the project on October 27, 2003, and staff notified the public the proposed facility would have an estimated disposal capacity of 1,819,000 cubic yards.

DHEC was required to review the application to determine, among other things, if the proposed facility was consistent with the Low Country Plan.[1] The SWPMA does not specify procedures for DHEC to follow in making need and consistency determinations. Jasper County Council notified DHEC it found the proposed T & T landfill to be consistent with the county's solid waste management plan in letters dated October 29, 1997; May 7, 2000; September 27, 2000; and December 16, 2003.[2] DHEC considered the letters to be amendments to Jasper County's portion of the plan and "penciled in" the changes.[3] DHEC also had minutes from the Jasper County

---

[1]. Section 44–96–290(F) of the South Carolina Code states "[n]o permit to construct a new solid waste management facility ... within a county or municipality may be issued by the department unless the proposed facility ... is consistent with local zoning, land use, and other applicable local ordinances, if any; [and] the proposed facility ... is consistent with the local or regional solid waste management plan and the state solid waste management plan." S.C.Code Ann. § 44–96–290(F) (2002).

[2]. These letters are referred to as Letters of Consistency by the parties.

[3]. DHEC often received such letters from counties and DHEC's practice was to handwrite the changes into the applicable plan. The LCCG has

Council meeting at which the county council voted favorably on the matter. After examining the applicable county requirements, in addition to the above-mentioned documents, DHEC determined T & T would be able to meet the land use requirements after receiving the requested landfill permit. Thus, on January 14, 2004, DHEC issued the landfill permit to T & T and stated in the permit the facility would have a final disposal capacity of approximately 1,819,000 cubic yards.

On January 30, 2004, Oakwood and Hickory Hill requested a contested case hearing, challenging DHEC's decision to issue the T & T permit. Oakwood and Hickory Hill alleged DHEC's consistency determination failed to meet the requirements of Section 44–96–290(F) of the South Carolina Solid Waste Policy and Management Act. S.C.Code Ann. § 44–96–290(F) (2002). In the alternative, Oakwood and Hickory Hill argued the permit should be revised to limit the final disposal capacity to 2.2 million cubic feet rather than the 1,819,000 cubic yards approved by DHEC because Jasper County's Letter of Consistency called for a final disposal capacity of only 2.2 million cubic feet.

On March 15, 2005, the Administrative Law Court (ALC) reversed DHEC's decision, finding the landfill was inconsistent with the Low Country Plan because the Plan had not been amended to allow for the T & T landfill. Specifically, the ALC determined section 44–96–80(O) of the South Carolina Code required any amendments to the Low Country Plan to be adopted by a multi-party endorsement.[4] The ALC did not make any findings on the capacity issue because its ruling on the consistency determination was dispositive.

On April 14, 2005, DHEC and T & T appealed the ALC's final order to the Board. The Board upheld DHEC's issuance

_____

not amended the 1994 Low Country Plan since its adoption; however, at the time of DHEC's review, the LCCG had submitted to DHEC a December 2002 draft plan to replace the 1994 plan. DHEC did not consider the draft plan in its review because at the time it had not been approved by the regional counties.

4. Section 44–96–80(O) of the South Carolina Code states "[a]ny amendments to a county or regional solid waste management plan must be adopted and implemented in the same manner as provided for in the initial plan." S.C.Code Ann. § 44–96–80(O) (2002). The Low Country Plan does not specifically state how the plan is to be amended.

of the permit on March 30, 2006. The Board determined neither section 44–96–80(O) of the South Carolina Code nor the Low Country Plan placed any limitations on a county's ability to amend the plan as it applied to that particular county. The Board also remanded the matter to the ALC to determine the allowable maximum capacity for the landfill because the ALC had not made any findings on the capacity issue.

On August 28, 2006, the ALC held DHEC had properly set the permit disposal capacity at 1,819,000 cubic yards.[5] Oakwood and Hickory Hill appealed and on July 9, 2007, the Board affirmed the ALC's August 28, 2006 Order and affirmed DHEC's decision to set the final disposal capacity at 1,819,000 cubic yards. This appeal follows.

## STANDARD OF REVIEW

The ALC presides over all hearings of contested DHEC permitting cases and, in such cases, serves as the fact-finder and is not restricted by the findings of the administrative agency. *Dorman v. S.C. Dep't of Health & Envtl. Control*, 350 S.C. 159, 164–65, 565 S.E.2d 119, 122 (Ct.App.2002); S.C.Code Ann. § 1–23–600(A)–(B) (Supp.2007). "An aggrieved party may appeal the ALC's decision to the agency's Appellate Panel [ (the Board) ]; however, the Panel's review is confined to the record and is governed by South Carolina Code section 1–23–610(C)." *Terry v. S.C. Dep't of Health & Envtl. Control*, 377 S.C. 569, 573, 660 S.E.2d 291, 293 (Ct.App. 2008). "Accordingly, the [Board] can reverse the ALC's deci-

---

5. The ALC found the application of a final disposal capacity of 2.2 million cubic feet for the facility would create an absurd result as it would allow the facility to operate for only four to five months, well below the design life of the facility and contrary to section 44–96–290(H) of the South Carolina Code. S.C.Code Ann. § 44–96–290(H) (2002). The ALC also concluded section 44–96–320(A) of the South Carolina Code provides DHEC is the sole agency with the authority to promulgate regulations governing the design of landfill facilities; therefore, it is the only entity with the authority to determine a landfill's final disposal capacity. S.C.Code Ann. § 44–96–320(A) (2002). South Carolina Regulation 61–107.11 imposes final disposal capacity restrictions on landfills based on a facility's design, including its size, dimension, layout, setbacks, buffers, and depth to groundwater. 25A S.C.Code Ann. Regs. 61–107.11 (Supp.2007).

sion if it determines the ALC's findings are not supported by substantial evidence contained in the record or are affected by an error of law." *Id.* at 573–74, 660 S.E.2d at 293–94; *see also Grant v. S.C. Coastal Council,* 319 S.C. 348, 353, 461 S.E.2d 388, 391 (1995) (stating the ALC's findings are supported by substantial evidence if, looking at the record as a whole, there is evidence from which reasonable minds could reach the same conclusion as the ALC).

After an aggrieved party has exhausted all administrative remedies, the party is entitled to judicial review by the South Carolina Court of Appeals. *See* S.C.Code Ann. § 1–23–380(A) (Supp.2007). Judicial review is confined to the record and is governed by South Carolina Code section 1–23–380(A)(5), which provides:

> The court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) affected by other error of law; (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C.Code Ann. § 1–23–380(A)(5) (Supp.2007). "Under our standard of review, we may not substitute our judgment for that of the [ALC] as to the weight of the evidence on questions of fact unless the [ALC's] findings are clearly erroneous in view of the reliable, probative and substantial evidence in the whole record." *Comm'rs of Pub. Works v. S.C. Dep't of Health & Envtl. Control,* 372 S.C. 351, 358, 641 S.E.2d 763, 766–67 (Ct.App.2007). Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached. *Leventis v. S.C. Dep't of Health & Envtl. Control,* 340 S.C. 118, 130, 530 S.E.2d 643,

650 (Ct.App.2000). "This Court, although not bound by the decision, will ordinarily defer to the opinion of a state agency as to the interpretation of a statute it is charged with the duty of enforcing " *S.C. Coastal Conservation League v. S.C. Dep't of Health & Envtl. Control*, 380 S.C. 349, 363, 669 S.E.2d 899, 906 (2008). "The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Brown v. S.C. Dep't of Health & Envtl. Control*, 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002) (quoting *Dunton v. S.C. Bd. of Examiners in Optometry*, 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987)).

## LAW/ANALYSIS

### I. Timeliness of Appeal

Respondents argue Appellants failed to timely appeal from the March 30, 2006 Order; therefore, the issues in that order are not preserved for our review. We disagree.

"An appeal to [this] court will not lie from an interlocutory order of the [Board] unless such order affects the merits or deprives the appellant of a substantial right." *Green v. City of Columbia*, 311 S.C. 78, 79–80, 427 S.E.2d 685, 687 (Ct.App.1993). "An order involves the merits if it finally determines some substantial matter forming the whole or part of some cause of action or defense in the case." *Id.* However, the courts of this state have "consistently held that an order of the circuit court remanding a case for additional proceedings before an administrative agency is not directly appealable." *Montjoy v. Asten–Hill Dryer Fabrics*, 316 S.C. 52, 52, 446 S.E.2d 618, 618 (1994); *see also S.C. Baptist Hosp. v. S.C. Dep't of Health & Envt'l. Control*, 291 S.C. 267, 270, 353 S.E.2d 277, 279 (1987) (noting an agency decision that does not decide the merits of a contested case, but merely remands to DHEC for further action is not a final agency decision subject to judicial review). "Additionally, piecemeal appeals are not favored by the court and should be avoided." *Foggie v. General Electric*, 376 S.C. 384, 390 n. 2, 656 S.E.2d 395, 399 n. 2 (Ct.App.2008).

In *Brown v. Greenwood Mills, Inc.*, the Workers' Compensation Commission awarded benefits to Brown for an occupa-

tional lung disease. 366 S.C. 379, 382, 622 S.E.2d 546, 548 (Ct.App.2005), *cert. denied,* January 31, 2007. The circuit court affirmed the Commission on compensability, but found the Commission should have allocated a portion of Brown's disease to his long history of smoking and remanded for allocation. *Id.* at 382–83, 622 S.E.2d at 548–49. The remand included "specific direction to make the necessary findings as to the apportionment. . . ." *Id.* at 386, 622 S.E.2d at 550. This court addressed the appealability of the order under section 1–23–390:

The question here is whether the circuit court order is a "final judgment" under section 1–23–390. Generally, an order is a final judgment on one or more issues if it constitutes an ultimate decision on the merits. In *Owens v. Canal Wood Corp.,* 281 S.C. 491, 316 S.E.2d 385 (1984), one of the two cases cited by the *Montjoy* court, the supreme court found "[t]he order of the circuit court *does not involve the merits* of the action. It is therefore interlocutory and not reviewable by this Court for lack of finality." *Owens,* 281 S.C. at 492, 316 S.E.2d at 385 (emphasis added) (citations omitted). Similarly, in *Hunt v. Whitt,* 279 S.C. 343, 306 S.E.2d 621 (1983), the supreme court held that "[b]ecause the interlocutory order of the circuit court does not involve the merits of the action, it is not reviewable by this Court for lack of finality." *Id.* (emphasis added) (citations omitted). Accordingly, in determining whether the court's order constitutes a final judgment, we must inquire whether the order finally decides an issue on the merits.

"An order involves the merits if it finally determines some substantial matter forming the whole or part of some cause of action or defense in the case." *Green v. City of Columbia,* 311 S.C. 78, 427 S.E.2d 685 (Ct.App.1993) (citing *Henderson v. Wyatt,* 8 S.C. 112 (1877)). In the case *sub judice,* the order of the circuit court finally determined an issue on the merits—that Brown's smoking, a non-compensable cause, contributed to his disability. The court noted "the employer does have the burden of proving . . . the interplay of a non-compensable cause" and found "the employer clearly met that burden[.]" Consequently, the circuit court ruled that "the employer was entitled to a determination of the proportion allocable to the non-compensable

cause[.]" The case was remanded, not for evaluation whether apportionment was appropriate, but "with specific direction to make the necessary findings as to the apportionment between compensable versus non-compensable causes, and a corresponding reduction in the Claimant's disability award."

The court's order mandates apportionment. This ruling is a decision on the merits because it decides with finality whether Greenwood is required to reduce its compensation.... Although the judge left the percentage of apportionment to the commission on remand, the panel would have no choice but to allocate some part of Brown's disability to the non-compensable cause. Accordingly, the circuit court's order constitutes a final decision on the issue of apportionment and is appealable.

*Id.* at 387–88, 622 S.E.2d at 551 (emphasis in original).

In comparison, in *Foggie v. General Electric,* also a workers' compensation case, this court noted an order of the circuit court remanding a case for additional proceedings before an administrative agency is not directly appealable. 376 S.C. 384, 388, 656 S.E.2d 395, 398 (Ct.App.2008). However, we found "where the circuit court's order constitutes a final decision on the merits and the remand order has no effect on the finality of the decision, the order is immediately appealable." *Id.* at 389, 656 S.E.2d at 398.

In *Foggie,* the circuit court affirmed the Commission on two issues; however, the court remanded the case to the Commission to make determinations related to permanent total disability and credit for veteran's disability. *Id.* at 387, 656 S.E.2d at 397. We distinguished *Foggie* from *Brown v. Greenwood Mills* because the order in *Brown* finally determined the issue on the merits—that the employee's smoking contributed to his disability—and the remand by the circuit court determined with finality whether there would be a reduction in compensation, leaving open only the determination of the percentage of apportionment for the Commission. *Id.* at 389, 656 S.E.2d at 398. Whereas, the order in the *Foggie* case was not a final decision on the merits because the circuit court did not make a final determination regarding whether or not the claimant was totally and permanently

disabled and did not finally determine the employer's entitlement to the veteran's disability credit. *Id.* We noted that both of the remanded issues were matters within the purview of the Commission, not this court, and because the issues had not been properly considered by the Commission, the circuit court was correct in remanding the case. *Id.* at 390, 656 S.E.2d at 398. We also noted the Commission is the ultimate fact finder, and for this court to review the record and make factual findings on the remanded issues would violate the governing APA statutes. *Id.* at 390, 656 S.E.2d at 398–99. Therefore, we held the circuit court order remanding the two issues was not a final decision on the merits and, thus, was not immediately appealable. *Id.*

Respondents argue Appellants should have appealed from the March 30, 2006 Order of the Board because the decision as to consistency was on the merits, and thus, was immediately appealable. Respondents further argue because Appellants failed to appeal from the March 30, 2006 Order, the holdings of that order are now the law of the case, and the only matter that remained after the March 30, 2006 Order concerned the final disposal capacity of the landfill.

However, this case also is distinguishable from *Brown* because the Board remanded the case to the ALC *not only* for a determination on the capacity of the landfill, *but also* for a determination as to whether DHEC was bound by the landfill capacity stated in Jasper County's Letters of Consistency, which the Board found to be a valid amendment of the Plan. As a result, this case is more similar to *Foggie* because only the ALC could determine whether DHEC was bound by the capacity stated in the Letter of Consistency or whether DHEC is the sole agency that can determine capacity. Therefore, until the ALC ruled on that issue, there was no final agency decision on the merits in this case and Appellants had not exhausted all of their administrative remedies.[6] As a

---

6. South Carolina Code section 1–23–380(A) states that "[a] party who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review." S.C.Code Ann. § 1–23–380(A) (Supp.2007). Thus, because the March 30, 2006 Order was not a final decision, Appellants' administrative remedies were not exhausted until after the July 9, 2007 Order.

result, Appellants timely filed their appeal after the receipt of the July 9, 2007 Order.

## II. S.C.Code Ann. § 44–96–80(O)

 Appellants argue Jasper County lacked authority to unilaterally amend the 1994 Low Country Plan, meaning the County's purported amendments to the plan were invalid and the ALC correctly denied the permit to T & T because the proposed landfill is inconsistent with the 1994 Low Country Plan. We disagree.

 "The primary rule of statutory construction is that the Court must ascertain the intention of the legislature." *Cooper v. Moore,* 351 S.C. 207, 212, 569 S.E.2d 330, 332 (2002). "In ascertaining the intent of the legislature, a court should not focus on any single section or provision but should consider the language of the statute as a whole." *Mid–State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996). "Subtle or forced construction of statutory words for the purpose of expanding a statute's operation is prohibited." *TNS Mills, Inc. v. S.C. Dep't of Revenue,* 331 S.C. 611, 624, 503 S.E.2d 471, 478 (1998). "The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Brown,* 348 S.C. at 515, 560 S.E.2d at 414 (quoting *Dunton,* 291 S.C. at 223, 353 S.E.2d at 133). Our supreme court has determined that DHEC, not the county, is charged with ensuring landfills meet the requirements for permitting. *Southeast Res. Recovery, Inc. v. S.C. Dep't of Health & Envtl. Control,* 358 S.C. 402, 408, 595 S.E.2d 468, 471 (2004).

Section 44–96–80(O) of the South Carolina Code states "[a]ny amendments to a county or regional solid waste management plan must be adopted and implemented in the same manner as provided for in the initial plan." S.C.Code Ann. § 44–96–80(O) (2002). However, the Low Country Plan does not specifically state how the Plan is to be amended. The SWPMA does not suggest that merely by proceeding under a regional plan, a county loses the power to make independent planning decisions regarding solid waste facilities located within its borders, or that such authority is then automatically

ceded to a regional Council of Governments or other organization.

In addition to getting approval for the landfill at county meetings, Jasper County approved and issued four Letters of Consistency to DHEC. At that time, accepting a letter of consistency from a county was a common DHEC practice.[7] In the past, the counties included in the Low Country Plan acted independently in modifying the plan as to their individual counties and making solid waste planning decisions. Oakwood had the Low Country Plan modified as it pertains to its landfill in Jasper County by the same procedure as the one in this case—Oakwood had a letter of consistency issued by the County in April 2001, allowing it to significantly expand its facility. Also, Colleton County amended the plan as it relates to that county and Beaufort County filed its own plan. None of these actions were challenged by the LCCG. Furthermore, Chris Bickley, Executive Director of the LCCG, testified Jasper County was free to amend its solid waste plan without obtaining approval from the LCCG and the Low Country Plan does not state the LCCG has to approve any amendments made by county government. Also, no testimony or evidence in the record supports the conclusion that either the LCCG or the member counties acting collectively were required to approve any plan amendment as it applied to any one county member through a "multi-party endorsement."

We find the Board correctly construed the statute to mean that counties participating in a regional plan retain the planning authority granted to the counties under section 44-96-80 of the South Carolina Code, unless the express terms of the plan indicate the counties have chosen to delegate that planning authority to a regional authority. Therefore, Jasper County properly amended the Low Country Plan as to Jasper County. As a result, Jasper County properly approved the T

7. Rudy Curtis, of DHEC, testified that since 1994, the low country's process to modify the Low Country Plan was to take action by any county council and notify DHEC of the activity. Once DHEC was notified of the activity, it became an attachment to the 1994 Plan and was a part of that Plan. Also, Arthur Braswell, Manager of DHEC's Division of Solid Waste Management, testified DHEC considers Letters of Consistency as modifications to a plan, not just as letters.

& T landfill and the landfill was consistent with the 1994 Low Country Plan.

### III. S.C.Code Ann. § 44–96–80(F)(1)

■■■ Appellants argue the ALC correctly found the failure of the LCCG to include Jasper County's revisions in its annual report to DHEC was evidence the revisions had not been recognized by the LCCG as valid amendments to the 1994 Low Country Plan. We disagree.

Section 44–96–80(F)(1) of the South Carolina Code states:

Each county or region submitting a solid waste management plan to the department shall thereafter submit an annual progress report to the department by a date to be determined by the department. The annual report shall contain information as may be requested by the department but must contain, at a minimum, the following: (1) any revisions to the solid waste management plan previously submitted by the county or region.

S.C.Code Ann. § 44–96–80(F)(1) (2002).

Section 44–96–80(F)(1) is not a provision that makes inclusion of a revision in the annual progress report mandatory for recognition and acceptance of an amendment to a solid waste management plan. The statute does not provide that revisions will be rendered null and void unless they are contained in the annual progress report. Jasper County did not include its amendments to its local solid waste management plan in the annual progress report to DHEC, but DHEC was made aware of Jasper County's revisions in the County's Letters of Consistency, which was an accepted method of notification to DHEC. Therefore, the annual progress report is not the only means by which DHEC may become aware of revisions to the Low Country Plan.

### IV. Final Disposal Capacity

■■■ Appellants argue if Jasper County's Letters of Consistency are deemed effective to amend the 1994 Low Country Plan, the amendment can only be effective for the maximum capacity authorized in the letters. We disagree.

Section 44–96–320(A) of the South Carolina Code provides that DHEC "shall promulgate, in addition to regulations generally applicable to all solid waste management facilities, regulations governing the siting, design, construction, operation, closure, and postclosure activities of all landfills that dispose of solid waste." S.C.Code Ann. § 44–96–320(A) (2002). Also, Section 44–96–290(H) states that "[p]ermits issued under this section shall be effective for the design and operational life of the facility, to be determined by [DHEC]. . . ." S.C.Code Ann. § 44–96–290(H) (2002).

DHEC is the sole agency with the authority to promulgate regulations governing the design of landfill facilities; therefore, it is the only entity with the authority to determine a landfill's final disposal capacity. Also, the ALC found that setting the final disposal capacity at 2.2 million cubic feet, as stated in the Letters of Consistency, would allow the facility to operate for only four or five months, which is an absurd result. Therefore, the ALC correctly determined DHEC properly set the disposal capacity at 1,819,000 cubic yards.

## CONCLUSION

Accordingly, the Orders of the Board are

**AFFIRMED.**

THOMAS, J., concurs.

PIEPER, J., concurs in a separate opinion.

PIEPER, J., concurring:

I concur in the conclusion reached by the majority, but I respectfully would utilize a different analytical framework as to the timeliness of the appeal.

I agree this case is distinguishable from *Brown v. Greenwood Mills, Inc.*[8] However, I would not rely on the analysis of *Foggie v. General Electric* as the beacon to navigate us to our final conclusion based on my dissent therein noting the fact that part of the case was finally determined by a circuit court.[9]

8. 366 S.C. 379, 622 S.E.2d 546 (Ct.App.2005).

9. 376 S.C. 384, 656 S.E.2d 395 (Ct.App.2008).

Instead, I would distinguish *Brown* simply on the basis that the remand in *Brown* occurred by virtue of judicial review by the proper reviewing court; the question in *Brown* was whether the circuit court's order of remand subsequent to a final agency decision was a final order on the merits and appealable. On the other hand, in the case herein, Respondents contend Appellants should have appealed from a decision within the administrative agency itself upon issuance of the Board's order of remand on March 30, 2006; thus, the question here is whether an agency ruling before completion of the administrative process must be immediately appealed. Because Section 1–23–380(A) of the South Carolina Code (Supp. 2007) requires exhaustion of "all" administrative remedies available within the agency unless review of the final agency decision would not provide an adequate remedy, I simply would hold there had not been a final decision requiring judicial review since the exhaustion of all administrative remedies had not been met as of the March 30, 2006, order of remand. I would further hold there had not been a preliminary, procedural, or intermediate action or ruling appropriate for judicial review since review of the final agency decision provides an adequate remedy. This statutory interpretation will avoid piecemeal review of administrative decisions prior to completion or exhaustion of the administrative proceedings.

Moreover, I believe that the judicial review mechanism of Section 1–23–380 [10] may be distinguished from the appellate review mechanism of Section 14–3–330 of the South Carolina Code.[11] I believe a distinction based upon the posture of the

---

**10.** Section 1–23–380(A) of the South Carolina Code (Supp.2007) states the following: "A party who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this article, Article 1, and Article 5. This section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy. Except as otherwise provided by law, an appeal is to the court of appeals." S.C.Code Ann. § 1–23–380(A) (Supp.2007). We also note that this statute has been amended, effective as of June 16, 2008, such that Article 5 is no longer referenced. *See* Act No. 334, 2008 S.C. Acts 334.

**11.** Section 14–3–330(1) of the South Carolina Code (2005), captioned "Appellate jurisdiction in law cases," references appealability; it in-

proceeding and the reviewing tribunal is necessary and complements the entire realm of administrative law. The legislature specifically created different mechanisms for review to effectuate the goals of the administrative system it established.

Here, in the context of the timeliness of the appeal, we are asked whether the intermediate or incomplete decision of the agency required earlier judicial review to preserve the claim. Thus, unless an exception to exhaustion applies, we must determine at what point exhaustion of remedies has occurred to warrant or require judicial review. Quite simply, we must squarely address whether the law of this State encourages the administrative process to proceed to its formal conclusion, or whether at some other point in the process judicial review of a partial decision is required to preserve a claim.

The general rule "that administrative remedies must be exhausted absent circumstances supporting an exception to the rule" is well established in South Carolina. *Hyde v. S.C. Dept. of Mental Health,* 314 S.C. 207, 208, 442 S.E.2d 582, 583 (1994). At its core, the doctrine of exhaustion serves two main purposes: (1) the protection of administrative agency authority; and (2) the promotion of efficiency. *Woodford v. Ngo,* 548 U.S. 81, 89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). An administrative agency's authority is protected by exhaustion because it gives the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into ... court, and discourages disregard of the agency's procedures." *Id.* (internal quotation omitted). Efficiency is promoted by the exhaustion doctrine because claims generally can be resolved more rapidly and economically by agency hearings and procedures than by litigation in court. *Id.* Moreover, "even where a controversy survives administrative review, exhaustion of the administrative procedure may

---

cludes: "any intermediate judgment, order or decree in a law case involving the merits in actions commenced in the court of common pleas and general sessions, brought there by original process or removed there from any inferior court or jurisdiction, and final judgments in such actions; provided, that if no appeal be taken until final judgment is entered the court may upon appeal from such final judgment review any intermediate order or decree necessarily affecting the judgment not before appealed from." S.C.Code Ann. § 14-3-330(1) (2005).

produce a useful record for subsequent judicial consideration."
*Id.*

Thus, when a statute mandates the exhaustion of administrative remedies, the animating principles of (1) protection of agency authority and (2) efficiency are necessarily present. As such, although parties to a case may decide that exhaustion is not efficient in a particular case, "administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims"; this is achieved by "requiring proper exhaustion of remedies, which means using all steps that the agency holds out, and doing so *properly" Id.* In short, absent an exception, so long as there is an opportunity for completion and review of a matter, then the parties must avail themselves of the entire administrative process prior to seeking judicial relief.[12]

In South Carolina, the doctrine of exhaustion is statutorily mandated in the Administrative Procedures Act (APA), which "purports to provide uniform procedures before State Boards and Commissions and for judicial review after the exhaustion of administrative remedies." [13] *Bursey v. S.C. Dep't of Health & Envtl. Control,* 369 S.C. 176, 182, 631 S.E.2d 899, 903 (2006). While the doctrine of exhaustion is not without exceptions, no exception has been presented herein nor has any reason been presented as to why review of the final agency decision would not provide an adequate remedy. When a matter is remanded

12. The statute suggests that as long as an adequate remedy is available upon review of the final agency decision, any preliminary, procedural, or intermediate agency action or ruling would be premature for judicial review. § 1–23–380(A) S.C.Code Ann. (Supp.2007). Furthermore, the statutory language of Section 1–23–380(A) establishes the distinction between a final decision and a decision that is preliminary, procedural, or intermediate in nature. *Id.* Even in the context of these preliminary or intermediate decisions, the statute does not require a party to seek *immediate* judicial review. *Id.* Similarly, the language of Section 1–23–610 of the South Carolina Code (Supp.2007) also requires a final decision when judicial review is sought from an administrative law judge. § 1–23–610 S.C.Code Ann. (Supp.2007) (Amended in Act No. 334, 2008 S.C. Acts 334).

13. While a caption is not controlling, I note the applicable statute here is captioned "Judicial review upon exhaustion of administrative remedies." § 1–23–380(A) S.C.Code Ann. (Supp.2007).

within the administrative process itself, that matter is essentially "in house" and does not lend itself well to the judicial review process until a final agency decision is made. To some extent, the premature involvement by the judicial branch could ultimately impact the decision-making process the legislature intended to grant to the executive branch through the administrative process in the first instance. Accordingly, I would hold the Appellants timely filed their appeal.

Having determined the appeal herein timely based upon a different analysis as the majority, I respectfully concur in the remainder of the majority opinion for the reasons cited and would affirm.